**Ronald L. McHONE, Plaintiff,**

v.

**MONTGOMERY WARD & COMPANY, Defendant and Third-Party Plaintiff,**

v.

**HAUGHTON–PEELE CORPORATION, Third-Party Defendant.**

**No. 7327.**

United States District Court, S. D. Ohio, W. D.

Sept. 16, 1975.

Ralph F. Mitchell, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, for third party defendant Haughton-Peele.

Jack D. Young, Kimble, Schapiro, Stevens, Harcha & Young, Portsmouth, Ohio, Edward K. Halaby, Cincinnati, Ohio, for defendant Montgomery Ward.

## OPINION

DAVID S. PORTER, District Judge.

This is a diversity action in which plaintiff Ronald McHone, a minor (who was two years of age at the time pertinent herein), seeks damages for personal injuries suffered on an escalator in defendant Montgomery Ward & Company's store in Portsmouth, Ohio. Ronald's father, Horace McHone, has already sued Montgomery Ward and the escalator manufacturer, Haughton-Peele Corporation, in state court (Scioto County Court of Common Pleas) for loss of his son's services and for medical expenses. In the state action, the jury returned a verdict in favor of Ronald's father against Montgomery Ward, and in favor of Haughton-Peele against Mr. McHone. The jury, in short, determined that sole liability rested with Montgomery Ward. The Court of Appeals affirmed, and time for further appeal has now expired.

Pending in the instant case are motions for summary judgment on behalf of both the plaintiff Ronald (doc. 35) and the third-party defendant Haughton-Peele (doc. 39). In essence they argue that Montgomery Ward is collaterally estopped from denying sole liability.

Broadly stated, collateral estoppel precludes the relitigation of essential facts or issues which were previously litigated and judicially determined. Montgomery Ward does not deny that the present case involves the identical issues which were necessarily litigated and finally adjudicated in state court, but asserts that Ohio adheres to strict doctrines of mutuality and privity whereby the party claiming the benefit of collateral estoppel must be one who would have been bound to his detriment had the earlier judgment gone the other way. Since Ronald was neither a party nor privy to a party in the first action, defendant argues, he would not have been bound by a judgment in defendant's favor, and thus he cannot now claim the benefit of collateral estoppel.[1]

Federal courts are, of course, generally bound to apply state substantive law in diversity cases. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Without engaging in the usual substantive-procedural-outcome determinative distinctions, we are willing to accept the premise that Ohio law applies in the case before us.[2] Our task, then, is to determine what the state law is—or, couched more broadly, how the

1. It appears that defendant's mutuality argument is a pertinent response only to plaintiff's motion for summary judgment, and not to third-party defendant Haughton-Peele's motion. Haughton-Peele was also a third-party defendant in the original action, and was, therefore, clearly a party to that action with interests adverse to the defendant (third-party plaintiff).

2. But *cf.*, *In re Air Crash Disaster near Dayton, Ohio, on March 9, 1967*, 350 F.Supp. 757, 767 (S.D.Ohio 1972), rev'd on other grounds, 487 F.2d 666 (6 Cir., 1973).

Supreme Court of Ohio would decide the issue at hand.[3]

The defendant cites *Whitehead v. General Telephone Co. of Ohio,* 20 Ohio St.2d 108, 254 N.E.2d 10 (1969), both for the proposition that Ohio retains strict requirements of mutuality and privity, and for the proposition that there is no privity between parents and their minor children in a case such as this. In *Whitehead,* a young girl's ear was injured when a lightning bolt caused an electrical discharge to be emitted from the earpiece of a telephone she was using in her home. A suit by the girl's parents against the telephone company for loss of the minor's services and medical expenses resulted in judgment for the telephone company. When the minor sued the same defendant for personal injuries, the identical issue (*i. e.,* negligent telephone installation and maintenance) previously decided adversely to the minor's parents arose again. The telephone company contended that the girl was estopped from relitigating the issue of defendant's liability. The Supreme Court of Ohio eventually upheld both the trial court's rejection of defendant's argument and a verdict in favor of the plaintiff minor.

It cannot be denied that the Ohio Supreme Court, in *Whitehead,* said it adhered to the "long recognized" position that collateral estoppel can only be applied when there is "an identity of parties or their privies in both the first and the second suit." *Id.,* at 113, 254 N.E.2d at 13. But the *Whitehead* Court also observed that "[t]he requirement of mutuality has been lessened, in some jurisdictions" (20 Ohio St.2d p. 113, 254 N.E.2d at 13) and made a special point of concluding that "the case *at bar* is not one which should result in a departure from present Ohio law" (emphasis add-

ed). *Id.,* at 116, 254 N.E.2d at 15. Thus, the Court did not foreclose the possibility of modifying Ohio law, and even seemed to suggest it would be amenable to such change in an appropriate case. A true understanding of *Whitehead,* then, depends upon a careful analysis of its precise holding and rationale.

The *Whitehead* Court determined that the plaintiff minor was neither in privity with her parents nor "a real party in interest in the suit by her parents." *Id.,* 20 Ohio St.2d at 116, 254 N.E.2d at 15. Nevertheless, the defendant telephone company urged that the girl should be estopped if it appeared that her interests were adequately represented in the first case. Hence, the rather rhetorical issue, as framed by the Court, was "whether the defense of collateral estoppel applies to one who was not a party to the prior suit in which the identical issues were determined." *Id.,* at 112, 254 N.E.2d at 13. Not surprisingly, the Court held that collateral estoppel may not be applied *against* a stranger—i. e., one who was not a party to the original action. In setting out its rationale, the Court declared that the concept of mutuality (*id.,* 20 Ohio St.2d at 116, 254 N.E.2d at 15):

". . . is founded upon the sound principle that all persons are entitled to their day in court. The doctrine of res judicata is a necessary judicial development involving considerations of finality and multiplicity, but it should not be permitted to encroach upon fundamental and imperative rights. It is our conclusion that the rule advocated by the appellant could create grave problems in establishing the adequacy of a non-party's representation in the prior suit and that the case at bar is not one which should result in a departure from present Ohio law."

---

**3.** See *Commissioner v. Estate of Bosch,* 397 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Roginsky v. Richardson-Merrill, Inc.,* 378 F.2d 832, 851 (2 Cir., 1967); *Tampa Electric Co. v. Stone & Webster Engineering Corp.,* 367 F.Supp. 27, 36–37 (M.D.Fla., 1973); *D'Ambra v. United States,* 354 F.Supp. 810, 815–16 (D.R.I., 1973). In *Roginsky, supra,* at 851, the

Second Circuit declared "that when a federal court must determine state law, it should not slavishly follow lower or even upper court decisions but ought to consider all the data the highest court of the state would use." See generally, C. Wright, Law of Federal Courts, § 58 (2d Ed., 1970).

The due process concerns thus expressed are, of course, entirely valid in cases such as *Whitehead* where the party against whom collateral estoppel is asserted was not a party to the original action. Today, however, it is generally acknowledged that those concerns are not pertinent in cases such as the one at hand where collateral estoppel is asserted against a defendant who was indisputably a party, with full representation, in the first action. Indeed, in such situations the "necessary" purposes of collateral estoppel ("considerations of finality and multiplicity," as well as avoidance of inconsistent results) would be needlessly thwarted by adherence to principles of strict mutuality. As Judge Traynor stated in the landmark case of *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942):

> "The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. * * There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation. * * Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. * * * Many courts have abandoned the concept of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted" (citations omitted).[4]

Careful reading thus reveals that *Whitehead* involves a different issue than the one presently before us; that the *Whitehead* rationale does not preclude use of collateral estoppel by the plaintiff in our case; that adherence to strict mutuality in our case would needlessly thwart the "necessary" purposes of collateral estoppel; and that the *Whitehead* Court impliedly expressed a willingness to modify strict mutuality in an appropriate case.

Of course, plaintiff's use of collateral estoppel could also be permitted without acknowledging any abandonment of strict mutuality. It has been recognized that notions of party identity and privity are rather flexible labels by which courts can reach equitable resolutions and still pay homage to traditional concepts of mutuality. See Vestal, "Extent of Claim Preclusion," 54 Iowa L.Rev. 1, 12 (1968); Note, 39 U.Cin.L.Rev. 407, 408 (1970). Thus, without rejecting mutuality, Ohio courts have frequently found party identity in cases where a person was not technically a party to the prior judgment.[5]

Interestingly, one example of such a case was handed down the very same day as *Whitehead.* In *Hofstetter v. Kronk,* 20 Ohio St.2d 117, 254 N.E.2d 15 (1969), Carl Hofstetter had been elected to a three-year term as a county court judge. Following his election the Ohio General Assembly passed legislation creating a municipal court and terminating county court jurisdiction. Shortly thereafter a prosecuting attorney filed a mandamus action in the Court of Common Pleas seeking an order compelling Hofstetter to turn over his court records. The court issued a writ of mandamus, Hofstetter surrendered the property in question, and no appeal was taken. Several years later, petitioner Hofstetter filed his own mandamus action in the Court of Appeals seeking to compel respondent county auditor to pay petitioner his county court judge salary for the three years of his elected term.

---

4. See also, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,* 453 F.2d 1177 (3 Cir., 1972); *Rachal v. Hill,* 435 F.2d 59, 61–62 (5 Cir., 1970), cert. den., 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971); *Fleisher v. Paramount Pictures Corp.,* 329 F.2d 424 (2 Cir., 1964), cert. den., 379 U.S. 835, 85 S.Ct. 68, 13 L.Ed.2d 43.

5. See, *e. g.,* the cases cited by the *Whitehead* Court, *supra,* 20 Ohio St.2d at 114–15, 254 N.E.2d 10.

The Ohio Supreme Court held that before Hofstetter could ever collect such salary it would be necessary to determine whether or not he was entitled to retain the position to which he had been elected. The Court went on to say that since that same issue was necessarily litigated in the earlier mandamus action, Hofstetter was barred from litigating it again—even though the county auditor was technically not involved in the earlier case which had been filed by the prosecuting attorney. The Court got around mutuality by observing that "[i]n applying collateral estoppel, a court looks beyond the nominal parties to discover the real party in interest," and concluding that "in both cases, the real parties in interest were [Hofstetter] and the county." *Id.,* at 119, 120, 254 N.E.2d at 17.

We think that a real party in interest theory, or something analogous, could also be applied in the case at hand. In the first place, *Whitehead* does not stand for the proposition that a minor and his parents can *never* be considered substantially identical parties under a real party in interest analysis. It is true that such an analysis was summarily rejected in *Whitehead,* but it was rejected on the strength of the following language from *State v. Cincinnati Tin & Japan Co.,* 66 Ohio St. 182, 207–08, 64 N.E. 68, 69 (1902): "For a record to constitute a bar or res adjudicata *against one* not a party or privy, but who assisted in the prosecution or defense of the action in aid of some interest of his own, the record itself must in some way show such assistance" (emphasis added). In our case, as in *Hofstetter v. Kronk, supra,* the person against whom collateral estoppel is asserted was a party to the prior action—it is the person seeking to use collateral estoppel whose prior involvement is questioned.

In the second place, we think that today in Ohio there is much more emphasis upon the need for uniformity than there was at the time *Whitehead* was decided, and thus greater incentive and/or reason for courts to find sufficient party identity for collateral estoppel purposes. Under Rule 19.1(A)(3) of the Ohio Rules of Civil Procedure, joinder is now required in situations where a minor receives personal injuries and, as a result of the same wrongful act, the parent has a claim for loss of services and medical expenses. The "Staff Note" to Rule 19.1, specifically citing *Whitehead,* indicates that the primary purpose of such mandatory joinder is to prevent the sort of "highly inconsistent" results which occurred in that case. See Page's Ohio Revised Code Annotated, Ohio Rules of Civil Procedure with Staff Notes, pp. 85–86 (1971).

For all the foregoing reasons, we are convinced that the Ohio Supreme Court would regard this action as one in which collateral estoppel is properly applicable—though we cannot say whether this result would be accomplished by abandoning strict mutuality or by finding substantial party identity in accordance with traditional rubric. *Cf., In re Air Crash Disaster near Dayton, Ohio, supra,* n. 2, at 768.

Accordingly, we hereby grant third party defendant Haughton-Peele's motion for summary judgment against third party plaintiff Montgomery Ward (see fn. 1); and we hereby grant plaintiff's motion for summary judgment against defendant Montgomery Ward on the issue of liability. Thus, only the issue of damages remains to be resolved before this Court.