HICKS ET AL., APPELLANTS, *v.* DE LA CRUZ ET AL., APPELLEES.

(No. 76-1317—Decided November 23, 1977.)

*Mr. Gurdon W. Wilson* and *Ms. Marlene Penny Manes,* for appellants.

*Mr. Thomas A. Luebbers,* city solicitor, and *Mr. Timothy L. Bouscaren,* for appellees city of Cincinnati, the University of Cincinnati, the Board of Trustees of the University of Cincinnati, and the Cincinnati General Hospital.

*Mr. Gordon C. Greene,* for appellees Aurora De La Cruz and Good Samaritan Hospital.

*Per Curiam.* Appellants contend that, on a motion for summary judgment, it was improper for the trial court to rule that the University of Cincinnati, the city of Cincinnati and the university board of trustees, all doing business as Cincinnati General Hospital, had state governmental immunity in the ownership and/or operation of the hospital, and so were immune from liabilities and actions arising from negligence at the hospital. Appellants rely heavily upon *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157, 285 N. E. 2d 732.

The Court of Common Pleas in the instant cause deter-

mined upon the evidence before it that the University of Cincinnati, at least over the period relevant herein, was a state-affiliated institution, and that the state had not consented to suit for its torts in the Court of Common Pleas. It was for these reasons that it granted the motion for summary judgment of the city of Cincinnati, the University of Cincinnati, and the university board of trustees.

Upon appeal, the Court of Appeals ascertained but one real issue: Did the trial court err in thus granting summary judgment under the evidence submitted to it by the movants in support of the motion? The Court of Appeals observed that the factual assertions made by appellees as to the state affiliation of the University of Cincinnati were practically uncontroverted by appellants, whose reliance before both the trial court and appellate court was premised, as here, upon *Sears.*

*Sears* stemmed from an action to recover damages for personal injuries from the city of Cincinnati as operator of the Cincinnati General Hospital. The *Sears* opinion makes it clear that the city of Cincinnati there argued that the hospital was operated by the University of Cincinnati, a public municipal university owned and operated by the municipality of Cincinnati. *Sears, supra,* at page 160. Moreover, Cincinnati's brief in *Sears* states as its first proposition of law: "The operation of a municipal general hospital is a governmental function and its operation is immune from tort liability." Thereafter, it is argued in the brief that "The City of Cincinnati at all times mentioned in the plaintiff's petition owned the Cincinnati General Hospital;" "The plaintiff-appellant has offered no case law to substantiate her feeling and contention that a municipal corporation which operates a public hospital is not immune from liability on the ground that it is an exercise of a governmental function but she, through counsel, has merely stated that it is time that the courts change the law;" and "A public municipal university, such as the University of Cincinnati, owned and operated by a municipal corporation appears to be almost a unique institution since the changes

in the laws of the State of Ohio by the Legislature in 1967."

It is clear that in *Sears*, the issue of the ownership and control of this hospital was before the court and that it was an issue which was directly confronted by the city of Cincinnati. All of the facts noted by the lower courts in the instant case to substantiate their conclusions that the state, rather than Cincinnati, owned and controlled the hospital were the same facts which existed at the time of *Sears*. In short, this court is now being asked to relitigate the issue of ownership and control of the hospital in the face of Cincinnati's repeated assertions in *Sears* that it owned, operated and controlled the hospital.

The modern view of *res judicata* embraces the doctrine of collateral estoppel, which basically states that if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue. Restatement of the Law 2d, Judgments (Tent. Draft No. 4 [1977]), Section 68, at page 1, and (Tent. Draft No. 2 [1975]), Section 88, at pages 89-90.

This court's decision in *Whitehead* v. *Genl. Tel. Co.* (1969), 20 Ohio St. 2d 108, 254 N. E. 2d 10, was discussed in *McHone* v. *Montgomery Ward & Co.* (S. D. Ohio 1975), 406 F. Supp 484. *McHone* was a diversity action in which the plaintiff sought damages for personal injuries and in which plaintiff's father already had sued the same defendant for loss of his child's services and for medical expenses. In that earlier action, which was in a state court, the jury had returned a verdict against Montgomery Ward. In *McHone*, the plaintiff moved for summary judgment on the ground that defendant Montgomery Ward was collaterally estop-

ped from denying its liability. Noting that Ohio law applied in the case, the federal court examined Montgomery Ward's assertion that this state adheres to the strict doctrine of mutuality, whereby a party claiming the benefit of collateral estoppel must be one who would have been bound to his detriment had the earlier judgment gone the other way. Montgomery Ward cited *Whitehead* for this proposition.

The United States District Court in *McHone* accurrately observed that the opinion in *Whitehead* concluded that it was not a case which *ought* to result in a departure from present Ohio law. The *McHone* court discerned the suggestion in *Whitehead* that collateral estoppel in Ohio would not be applied against a stranger, *i. e.*, one who has not had his day in court, and correctly noted that nothing in *Whitehead* precludes operation of the doctrine of collateral estoppel where it is asserted against a defendant who was a party, with full representation, in the initial action.

It is our determination that appellees may not now relitigate the issue of ownership and control of this hospital, all questions pertaining thereto having been properly before this court in *Sears, supra.* The pertinent appellees herein were represented parties or were in actual privity with represented parties in *Sears* and were accorded a full and fair day in court in that proceeding.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN, J., dissents.