**State, ex rel. Bush,**
v.
**Spurlock**
*[Cite as 3 AOA 19]*

*Case No. C-870693*
*Hamilton County (1st)*
*Decided May 9, 1990*

*Gurley, Rishel, Myers & Kopech and David E. Northrop, Esq., 17 South High Street, Suite 707, Columbus, Ohio 43215, for Relators.*

*Wood & Lamping and Mark R. Fitch, Esq., 2500 Cincinnati Commerce Center, 600 Vine Street, Cincinnati, Ohio 45202-2409, for Respondents.*

*Per Curiam.*

Relators are eleven present or former public employees of the Norwood Board of Education (the Board) employed in janitorial or custodial positions. They seek a writ of mandamus for an

award of back pay, claiming that their layoffs and demotions in July 1981 were unlawful under R.C. 124.321. The respondents are the members and the treasurer of the Board. On April 19, 1989, the Supreme Court reversed our order dismissing relators' complaint under Civ. R. 12(B)(1), (6), and (7), and remanded the case for further proceedings. *State, ex rel. Bush, v. Spurlock (1989), 42 Ohio St. 3d 77, 537 N.E.2d 641. The issues now before us, by way of cross-motions for summary judgment, are: (1) whether the unappealed of the common pleas court under R.C. Chapter 2506 was* res judicata; and (2) if so, whether mandamus is the proper remedy for a reinstated public employee to recover back pay due for the period of the wrongful layoff or demotion. Upon the record, the written stipulation of facts, the briefs, and the oral arguments of counsel, we hold that a writ of mandamus should issue with respect to all claims except the post-reinstatement reduction of pay claims.

Relators, Harmon Bush, Everett Hoskins, Greg Pennington, William Phillips, Russell Preston, Walter Preston, William E. Scott, Patrick Simpson, and Cecil Smith, were classified civil-service employees laid off by the Board effective July 1, 1981. On July 1, 1981, the Board also reduced relator, Boyd Swafford, from the position of custodian-in-charge to janitor. On July 14, 1981, the Board reduced relator, Kenneth Kayser, from the position of engineer to custodian. By February 1983, the Board had recalled and voluntarily reinstated all relators to their former jobs except Swafford, who found another job while laid off, and Kayser, who resigned from the demoted position of custodian.

Subsequently, all relators challenged their layoffs and demotions before the Norwood Civil Service Commission (the Commission). At the hearing the Commission did not take evidence, but considered only counsel's respective arguments directed to the legal issues. Based upon these arguments alone, the Commission concluded that the temporary layoff and demotions were justified and proper * * * in the interest of economy and for the sole reason of lack of sufficient funds. *State, ex rel. Bush, v. Spurlock, supra,* at 77, 537 N.E.2d at 642.

All but Bush filed a R.C. Chapter 2506 administrative appeal in the Hamilton County Court of Common Pleas. By letter of February 28, 1985, Judge Gilbert Bettman, the assigned trial judge, informed counsel as follows:

"The transcript of the record of proceedings before the Commission contains no evidence other than letters laying off plaintiffs, their notice of appeal to the Civil Service Commission and the order of the Commission. The transcripts of proceedings contain nothing but extensive arguments by counsel as to what the law might be applicable to the facts. They contain no evidence."

Accordingly, he advised counsel that he would set a hearing on the appeal after they had completed discovery. He also encouraged counsel to pursue settlement negotiations since the relators had since been reinstated.

When the appeal was submitted to the trial court, counsel for the parties did not request an evidentiary hearing, pursuant to R.C. 2506.03, but once again argued only the legal issues raised in their briefs. By letter dated November 12, 1986, the trial judge advised counsel that upon the record he had concluded that the layoffs were contrary to law and appellants * * * [are] entitled to be compensated for their lost wages mitigated by amounts otherwise earned or received as unemployment compensation. He further advised that if the parties were unable to agree upon amounts, he would conduct another hearing for that purpose.

On December 2, 1986, the trial judge formalized and filed comprehensive separate findings of fact and conclusions of law in addition to the judgment entry. He found that relators were classified employees, and that, as to any layoffs, the Board and Commission were governed by the terms and procedures of R.C. Chapter 124. In finding that the Board had not complied with the procedures of R.C. Chapter 124, requiring creation of a classification plan and the calculation of employee-retention points, the trial judge also found that none of the relators * * * were provided a reason for their respective layoffs. He specifically noted:

"The Board produced no evidence at the civil service hearing for the reason for Appellants' respective layoffs. No evidence was presented at the civil service hearing on lack of funds or lack of work or lack of need for any of the positions affected by layoff."

These findings led to the trial judge's conclusion that the layoffs were void, that the Commission's order affirming the layoffs by the Board was not supported by reliable, probative and substantial evidence, and that relators were entitled to be compensated for their lost wages

mitigated by amounts otherwise earned and/or received as unemployment compensation. Subsequently, Judge Bettman determined that, despite his previous order, he could only disaffirm the Commission's order since he had no statutory to award back pay.

On February 27, 1987, the trial judge entered a judgment entry which he designated Final Entry, deleting the earlier reference to back pay and ordering the Commission's decision reversed and vacated. This order further stated that it was an adjudication of all claims and the rights and liabilities of all parties. Neither the Board nor the Commission appealed the trial court's order. Asserting that the February 27, 1987, judgment entry was a final adjudication, relators filed this complaint in mandamus.

In reality, relators contend that the trial court's order of February 27, 1987, vacating the Commission's order, which was not appealed by either the Board or the Commission, is now *res judicata.* In *Seibel v. Crown Cork & Seal Co., Inc.* (Jul. 18, 1986), Hamilton App. No. C-850758, unreported, we held that to prevail upon the doctrine of *res judicata,* a party must plead and prove that:

"(1) the party against whom *[res judicata]* is sought was a party or in privity with a party to the prior action;

"(2) final judgment was rendered on the merits in the previous case after a full and fair opportunity to litigate the issue;

"(3) the issue was admitted or actually tried and decided and was necessary to the final judgment; and

"(4) the issue was identical to the issue involved in the prior suit."

Under the doctrine of *res judicata* an unappealed judgment rendered on the merits is conclusive as to the parties and is an absolute bar to their relitigation of the issues. *State, ex rel. Cartmell, v. Dorrian* (1984), 11 Ohio St. 3d 177, 178, 464 N.E.2d 556, 558-59. However, as we have also held, the judgment must be the result of the court's decision on the merits of the case, rather than the vacation of an order based upon technical or procedural grounds. *Sayler v. Ohio State Racing Com.* (1982), 7 Ohio App. 3d 189, 454 N.E.2d 982.

R.C. 2506.04 provides, in pertinent part, that ["c]onsistent with its findings the court may affirm, reverse, vacate or modify the order * * * or remand the cause * * *." It is undisputed that R.C. 124.321 authorizes an appointing authority to lay off public employees for reasons of economy and efficiency. Specifically, a lack of funds or a financial crisis is a legitimate basis for layoffs. *Ashworth v. Civil Service Comm.* (Mar. 24, 1982), Hamilton App. Nos. C-800640, C-800653, C-800669, unreported. R.C. 124.321 provides in pertinent part as follows:

"(A) Whenever it becomes necessary for an appointing authority to reduce its work force the appointing authority shall lay off employees or abolish their positions in accordance with sections 124.321 [124.32.1] to 124.327 [124.32.7] of the Revised Code and the rules of the director of administrative services.

"(B) * * * [T]he appointing authority shall itself determine whether a lack of funds exists and shall file a statement of rationale and supporting documentation with the director of administrative services prior to sending the layoff notice.

"A lack of funds means an appointing authority has a current or projected deficiency of funding to maintain current, or to sustain projected, levels of staffing and operations.

"* * *

"(E) The director of administrative services shall promulgate rules, under Chapter 119. of the Revised Code, for the determination of lack of work within an appointing authority, for the abolishment of positions by an appointing authority, and for the implementation of this section."

The purpose of these guidelines is to protect public employees and assure that layoffs are done in good faith and not as a subterfuge. *Weston v. Ferguson (1983), 8 Ohio St. 3d 52, 457 N.E.2d 818;* Ashworth v. Civil Service Comm., supra.

It is evident that the Board, as appointing authority, did not carry out its mandated duty under R.C. 124.321(B) of filing a statement of rationale and supporting documents to establish the existence of a lack of funds.[1] In fact, as the trial court correctly noted, the Commission received no evidence of procedures and classifications statutorily mandated which would satisfy its duty to determine if a lack of funds existed within the Board. Therefore, the trial court's order, amplified by its separate findings of fact and conclusions of law, was an adjudication of the relators' appeal based upon substantive grounds, and we find that the trial court's February 27, 1987, judgment entry, which reversed and vacated the Commission's order, is *res judicata* and is conclusive.

Although relator Bush did not appeal the decision of the Commission to the common pleas court under R.C. Chapter 2506, he is still entitled to assert the illegality of his layoff against the Board under the doctrine of collateral estoppel. *Hicks v. De La Cruz* (1977), 52 Ohio St. 2d 71, 369 N.E.2d 776. In *Hicks,* the court held that the doctrine of collateral estoppel may be employed offensively to preclude litigation of an issue adjudicated in a prior proceeding in which the party against whom estoppel is sought was a party or in privity with a party, unless he lacked full and fair opportunity to litigate that issue in the first action. See *Seibel v. Crown & Seal Co., supra.*

Having determined that the layoffs were unlawful, we also hold that relators, who are admittedly members of the classified civil service under R.C. 124.11(B), are entitled to back pay for the period during which they were wrongfully laid off. A reinstated public employee may use mandamus to recover compensation due for the time he was wrongfully excluded from employment provided that the amount is established with certainty. *Monahan v. Richley* (1972), 32 Ohio St. 2d 190, 291 N.E.2d 462; *State, ex rel. Bardo, v. City of Lyndhurst* (1988), 37 Ohio St. 3d 106, 114, 524 N.E.2d 447, 454; *State, ex rel. Bush, v. Spurlock, supra* at 80, 537 N.E.2d at 644. The amount recoverable is the compensation the public employee would have received had he not been wrongfully excluded from his employment reduced by what he earned or by diligence could have earned. *Monahan v. Richley, supra.* As the employer, the Board has the burden of proving that the employee either found or could have found other employment. *State, ex rel. Martin, v. Bexley City School Dist. Bd. of Education* (1988), 39 Ohio St. 3d 36, 528 N.E.2d 1250.

The parties' stipulation acknowledges that each relator's request for damages specified in the complaint has been refused by respondents, and that the compensation due during the wrongful layoff or demotion is with certainty as follows:

| Relator | Period | Compensation | Interim earnings | Back-Pay |
|---|---|---|---|---|
| Harmon Bush | 7/1/81-8/23/82 | $13,617.28 | $2,163.00 | $11,454.28 |
| Everett Hoskins | 7/1/81-1/11/82 | 5,777.44 | 2,376.00 | 3,404.44 |
| Kenneth Kayser | 7/14/81-9/26/83 | 4,890.88 | — | 4,890.88 |
| Greg Pennington | 7/1/81-2/11/82 | 7,177.84 | 3,016.00 | 4,161.84 |
| William Phillips[2] | 7/1/81-1/3/83 | 17,711.92 | 11,222.40 | 6,489.52 |
| Russell Preston[2] | 7/1/81-9/3/82 | 14,064.00 | 9,346.32 | 4,717.68 |
| Walter Preston[2] | 7/1/81-3/17/82 | 8,320.24 | 6,588.21 | 1,732.03 |
| William E. Scott | 7/1/81-8/6/81 | 1,141.92 | — | 1,141.92 |
| Patrick Simpson | 7/1/81-2/10/82 | 7,290.40 | 2,756.00 | 4,534.40 |
| Cecil Smith | 7/1/81-2/11/82 | 7,084.88 | 4,980.50 | 2,104.38 |
| Boyd Swafford | 7/1/81-8/23/82 | 564.48 | — | 564.48 |

Where, as here, a public employee has a clear legal right to compensation and the appointing authority has a clear legal duty to pay that compensation, mandamus is an appropriate remedy to compel payment. Upon our determination that these layoffs were unlawful, payment of the compensation due the reinstated or demoted relators requires only a ministerial act, and the Board's treasurer has a clear legal duty to perform that ministerial task of making payment. Accordingly, we hold that mandamus is not precluded by a plain and adequate remedy at law. *State, ex rel. Fenske v. McGovern* (1984), 11 Ohio St. 3d 129, 464 N.E.2d 525. Respondents are ordered to make payment of money to each relator in the amounts specified as back pay in the foregoing schedule.

We also hold that the claim of relators Russell Preston and Walter Preston for longevity pay due in April 1985 is proper. Upon the parties' stipulation that respondents have not made payment in specified amounts, relators have a clear right to payment caused by the unlawful layoff, and respondents have a clear legal duty to make payment. Therefore, mandamus is the appropriate remedy to compel the respondents to perform their duty by making payment of longevity pay. *State, ex rel. Fenske v. McGovern, supra,* at 132-33, 464 N.E.2d at 529.

The claim of relators William Phillips, Russell Preston, and Walter Preston with respect to their hourly wage after reinstatement presents a different issue for purposes of summary judgment since the core of the relief which they seek addresses a reduction in pay under R.C. 124.34 rather than the subject of unlawful layoffs under R.C. 124.321. Unlike *State, ex rel. Crockett, v. Robinson* (1981), 67 Ohio St. 2d 363, 423 N.E.2d 1099, which involved unpaid salary increases fixed during an unlawful layoff, and relied on as authority by relators, the parties' stipulation demonstrates that the acts objected to did not occur during the period in which [they were] wrongfully excluded from employment, *id.* at 369, 423 N.E.2d at 1102. Accordingly, the post-reinstatement claims involving reduction in pay were not raised or addressed in the action before the trial court which related only to layoffs. Mandamus is not an appropriate remedy since an adequate remedy exists under R.C. 124.34, and the motion for summary judgment relating to the post-reinstatement claims of Phillips, Russell Preston, and Walter Preston is overruled and respondents' motion for summary judgment with respect to these claims is granted.

Finally, respondents continue to maintain that mandamus is inappropriate until relators

join the Commission as a party to the action. Respondents contend that the Commission is a necessary party because it will be held responsible for failure to comply with the procedural requirements of R.C. Chapter 124 if these layoffs are determined to be invalid. Without deciding the issue the Supreme Court expressed its reservations concerning the argument's merit in *State, ex rel. Bush, v. Spurlock, supra* at 81, 537 N.E.2 at 645. As a result of our review we find no justification for respondent's insistence that the Commission must be joined. The Board is the appointing authority under R.C. 3313.47, which states in pertinent part:

"Each city, * * * local board of education shall have the management and control of all of the public schools of whatever name or character in its respective district. If the board has adopted an annual appropriation resolution, it may, by general resolution, authorize the superintendent or other officer to appoint janitors, superintendents of buildings, * * *"

This employer-employee relationship between a school board and its janitors has long been recognized by this court pursuant to R.C. 3313.47. *State, ex rel. Bartholomew, v. Witt* (1914), 3 Ohio App. 414. Since the Board is the appointing authority as defined by R.C. 124.01(D), the Commission is not a necessary party to this action. Under R.C. 2731.01 mandamus is an action to compel the appointing authority to perform a duty under the law, and there is no requirement that relators join everyone affected by the issuance of the writ.

It is, therefore, ordered that relators' motion for summary judgment is granted with respect to all claims at issue except the post-reinstatement claims of William Phillips, Russell Preston and Walter Preston, and respondents are ordered to provide to relators unpaid back pay and longevity pay because of the unlawful layoffs consistent with the decision herein. It is further ordered that relators' motion for summary judgment, as it relates to their claims after reinstatement, is overruled, and respondents' motion for summary judgment in these respects is granted.

*Writ issued.*

DOAN, P.J., UTZ and GORMAN, JJ.

---

[1] Ohio Adm. Code 124-7-01(A)(3) places the burden of proof on the appointing authority to demonstrate a lack of funds.
[2] The stipulation also includes the following claims which relate to the period after reinstatement:

William Phillips - Upon reinstatement his rate of pay was reduced from $5.95 per hour to $5.66 per hour.

Russell Preston - Upon reinstatement his rate of pay was reduced from $5.95 per hour to $5.80 per hour and had it not been for the layoff, he would have received $325 in longevity pay in April, 1985.

Walter Preston - Upon reinstatement his rate of pay was reduced from $5.95 per hour to $5.49 per hour, and had it not been for the layoff, he would have received $325 in longevity pay in April, 1985.