### Egan v.
### National Distillers & Chemical Corp.
*[Cite as 7 AOA 4]*

*Case No. C-890220*
*Hamilton County, (1st)*
*Decided September 5, 1990*

*R. Guy Taft, Strauss & Troy, 2100 Central Trust Center, 201 East Fifth Street, Cincinnati, Ohio 45202, for Plaintiffs-Appellants.*

*Mark A. Vander Laan and Patrick D. Lane, Dinsmore & Shohl, 2100 Fountain Square Plaza, 511 Walnut Street, Cincinnati, Ohio 45202, for Defendant-Appellee.*

*Per Curiam.*

This cause came on to be heard upon the appeal, the transcript of the docket, journal entries and original papers from the Hamilton County Court of Common Pleas, the transcript of the proceedings, the assignments of error, and the briefs and oral arguments of counsel.

On February 17, 1983, the appellants, LeRoy and Catherine Egan, filed an intentional tort action against the appellee. The action stemmed from a chemical explosion and fire that occurred at the appellee's plant, where appellant Leroy Egan was an employee. The explosion and fire inflicted extensive burns and shrapnel wounds upon Mr. Egan and a co-worker, Paul Pratt, who were standing within a few feet of each other. Mr. Pratt died after surviving thirty-seven days in the burns unit of Cincinnati Medical Center. Mr. Egan's injuries resulted in significant and allegedly permanent disability.

On June 23, 1988, the appellants moved for partial summary judgment on all issues concerning liability. The basis of the appellants' motion was the decision of the jury in the United States District Court for the Southern District of Ohio in an action brought against the appellee by Mr. Pratt's widow. The federal jury found that the explosion which led to Pratt's eventual death was the result of an intentional tort under Ohio law. The verdict against the appellee was upheld by the United States Court of Appeals for the Sixth Circuit in a published decision, *Pratt v. National Distillers & Chemical Corp.* (C.A. 6, 1988), 853 F.2d 1329, certiorari denied (1989), ___ U.S. ___, 109 S. Ct. 1121. The appellants asserted in their motion for partial summary judgment that the decision of the federal court should have precluded the appellee from relitigating the issue of its liability in the case sub judice since the facts and law were identical.

The trial judge denied the appellants' motion for partial summary judgment. The case proceeded to a trial by jury, which returned a verdict against the appellants. The appellants thereafter filed a motion for judgment notwithstanding the verdict, reasserting their theory of offensive collaterial estoppel, and, in the alternative, requested a new trial on the basis of erroneous jury instructions. The trial judge denied both motions.

On appeal, appellants assert two assignments of error:

"1. The trial court erred to the prejudice of plaintiffs-appellants in overruling their motion for partial summary judgment and in overruling their motion for judgment nov, and by refusing to enter judgment for plaintiffs as a matter of law on the issue of liability.

"2. The trial court erred to the prejudice of the plaintiffs-appellants in refusing to instruct the jury on misrepresentation, concealment, and intentional failure to warn."

The gist of the appellants' first assignment of error concerns the trial judge's refusal to preclude the appellee from relitigating the issue of its liability based upon the Pratt decision. As we have observed before, Ohio has generally continued to apply the requirement of mutuality of parties in order to invoke either the doctrine of res judicata or the doctrine of collateral estoppel. *Monahan v. Eagle Picher Industries* (1984), 21 Ohio App. 3d 179, 180, fn. 1, 486 N.E. 2d 1165, 1167, fn. 1 (citing *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 443 N.E.2d 978). In *Monahan* we also noted that in the case of *Hicks v. De La Cruz* (1977), 52 Ohio St. 2d 71, 369 N.E. 2d 776, the Ohio Supreme Court departed from the mutuality rule in an "offensive" use of collateral estoppel.

The appellants assert that by its decision in *Hicks* "[t]he Ohio Supreme Court has expressly required the application of offensive collateral estoppel against a defendant on issues that previously have been established against it ***." We disagree.

In *Hicks*, the Ohio Supreme Court used nonmutual offensive collateral estoppel to preclude the City of Cincinnati from relitigating the issue of its ownership and control of a hospital when that issue had been previously determined in another case involving the city as a party. However, the Ohio Supreme Court in *Goodson, supra*, clearly limited the effective use of Hicks as precedent. Specifically, the court in *Goodson* made clear that the use of nonmutual offensive collateral estoppel in Hicks related only to the narrow issue of ownership and control of the hospital." *Goodson* at 200, 443 N.W.2d at 985.

Furthermore, following a lengthy discussion of mutuality as a prerequisite to the application of collateral estoppel, the court in Goodson reaffirmed its adherence "to such principle as a general proposition." *Id.* at 202, 443 N.E. 2d at 987. The court stated:

"Whether or not we, in the future, may conclude it to be advisable to adopt the nonmutuality rule as a general proposition, for the present we reaffirm our prior general stance that collateral estoppel may generally be applied only when the party seeking to use the prior judgment and the party against whom the judgment is being asserted were parties to the original judgment or in privity with those parties." *Id.*

In sum, *Hicks* does not, as the appellants argue, enunciate a strict rule which, as applied to the case *sub judice*, would require the use of nonmutual collateral estoppel. Rather, *Goodson* clearly reaffirms the general rule requiring mutuality, while allowing that some cases may provide an exception "upon the basis of serving justice within the framework of sound public policy." *Goodson, supra* at 202, 443 N.E.2d 987.

We have not found Ohio authority regarding the standard of appellate review of a trial court's decision whether to impose nonmutual collateral estoppel offensively. As noted by one scholar, a clear majority of state appellate courts accord the decision deferential review. Louis, Discretion or Law: "Appellate Review of Determinations That Rule 11 Has Been Violated or That Nonmutual Issue Preclusion Will Be Imposed Offensively, 68 N.C.L. Rev. 733, 754 (1990)." The opposite approach is to treat the issue as involving a mixed question of fact and law requiring de novo review. Applying either standard, however, we believe that the trial judge's decision in the case *sub judice* mustwith stand our scrutiny.

Abuse of discretion "connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." *Pembaur v. Leis* (1982), 1 Ohio St. 3d 89, 91, 437 N.E.2d 1199. Our review of the record fails to disclose any evidence to support such a finding. To the contrary, the trial judge proffered two cogent grounds for his refusal to apply collateral estoppel in the instant case:

(1) the lack of mutuality of parties in contravention of the general rule, and

(2) the intervening decision of *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100, 522 N.E.2d 489, in which the Ohio Supreme Court expressly stated that it was imposing a new interpretation on its earlier decisions in order to create a deliberately more restrictive evidentiary standard which would "significantly" limit the areas in which an intentional tort

could be found. In our judgment, these grounds reflect not only a proper use of discretion, but, also, a sound legal basis for the judge's decision.

Accordingly, we conclude that the trial judge neither abused his discretion nor committed error when he refused to give preclusive effect to the *Pratt* decision and denied the appellants' motions for partial summary judgment and judgment notwithstanding the verdict.

We turn next to the second assignment of error regarding the triad judge's refusal to accept the appellants' proffered jury instructions on misrepresentation, concealment, and intentional failure to warn.

The appellants' requested instructions concerned the type of conduct from which the jury could find that the appellee had committed an intentional tort. The trial judge, in rejecting the appellants' proffered instructions, indicated that he did so on the basis of his interpretation of *Van Fossen, supra.* T.p. 1425. The pertinent language in *Van Fossen* is as follows:

"There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross recklessness or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an 'intentional tort' and therefore an exception under *Blankenship* or *Jones*, to the exclusivity of the Act." *Id.* at 117, 522 N.E. 2d at 504-5.

Our review of *Van Fossen*, as well as its decisional predecessors and progeny, convinces us that no error is demonstrated by the trial judge's decision to reject the appellants' proffered instructions in favor of those which he gave. Rather, we conclude that the instructions given by the trial judge are entirely consistent with, and adequately instruct upon, the proper standard of proof for imposition of liability in the case sub judice. As noted previously, the court's stated purpose in *Van Fossen* was to limit "the areas within which 'intent' on the part of the actor may be circumstantially inferred" in order to find an intentional tort. *Id.*, 522 N.E.2d at 504. In the jury instructions which he gave, the trial judge specifically adopted the language of *Van Fossen*, quoted above. Moreover, the trial judge also instructed the jury upon the elements necessary to show

the requisite intent for the purpose of proving an intentional tort, using language almost verbatim from *Van Fossen*. We are unable to discern any prejudice in this. The appellants' second assignment of error is therefore also overruled.

The judgment of the trial court is affirmed.

DOAN, P.J., SHANNON and HILDEBRANDT, J.J.