DECISION
Plaintiff-appellant, Martha R. Bauer, appeals from three separate decisions and judgment entries of the Franklin County Court of Common Pleas granting summary judgment for defendants-appellees, Huntington National Bank ("Huntington"), C-Pac Service, Inc., James R. Fisher, Michael Cassidy, Arena Motor Sales, and Anthony M. Arena. The issues in the present case arise from the alleged improper sale and transfer of title of two automobiles, a 1970 Shelby Ford Mustang and a 1969 American Motors AMX, against the backdrop of a bitterly litigated divorce between appellant, Martha R. Bauer, and her former husband, Mark Hannum. The case also involves a Chapter 13 Bankruptcy Petition filed in the Southern District of Ohio prior to commencement of the divorce action which remained pending for some time after initiation of the divorce. A third related case involves a legal malpractice action brought by appellant against counsel in her divorce case.
Appellant initially filed the present action against the current appellees and other defendants on April 1, 1996, based upon various causes of action arising from the alleged improper sale and disposition of the Mustang and the AMX automobiles, including forgery of her signature on the titles, conversion, fraud, breach of fiduciary duty, breach of contract, violations of Ohio's motor vehicle title statutes, R.C. 4505.01 et seq., and intentional infliction of emotional distress. Appellant dismissed her complaint without prejudice on January 29, 1997, and then refiled on January 26, 1998. The trial court, in separate decisions, granted summary judgment for Huntington on January 13, 1999, C-Pac and Fisher on January 13, 1999, Anthony Arena and Arena Motor Sales on February 25, 1999, and Michael Cassidy on March 5, 1999. Appellees do not dispute that the earlier decisions did not contain final appealable order language and the time for appeal ran from the last decision and entry granting summary judgment for Michael Cassidy on March 5. The trial court's judgments in favor of appellees were based upon the doctrine ofres judicata, finding that all of appellant's claims were related to her title interest in the automobiles, an issue over which the trial court in the divorce matter had exercised jurisdiction. The trial court also found that collateral estoppel would preclude litigation of issues pertaining to the sale of the automobiles, even against defendants who were not parties to the divorce action.
Appellant has timely appealed and brings the following assignment of error:
 THE LOWER COURT ERRED IN HOLDING MRS. BAUER'S CLAIMS ARE BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL.
At the outset, we note that the present matter was decided on summary judgment. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the motion. Tokles Son, Inc. v. Midwestern Indemn. Co.
(1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. Additionally, a moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the nonmoving party has no evidence to prove its case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Rather, the moving party must point to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claims. Id.
An appellate court's review of summary judgment is denovo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588; Bard v. Society National Bank, aka KeyBank (Sept. 10, 1998), Franklin App. No. 97APE11-1497, unreported. Thus, we conduct an independent review of the record and stand in the shoes of the trial court. Jones v. Shelly Co. (1995), 106 Ohio App.3d 440,445. As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds. Bard, supra.
Since we are addressing the matter on review of summary judgment, the following facts are drawn from appellant's affidavit submitted in opposition to summary judgment or from uncontested affidavits and documentary evidence submitted by appellees. On November 6, 1989, appellant and her then-husband, Hannum, initiated a Chapter 13 bankruptcy proceeding in the Southern District of Ohio, Eastern Division. In 1992, the AMX and Mustang were both titled in appellant's name. Appellee Huntington had a lien on the Mustang pursuant to which it held the original certificate of title. In early 1992, appellant and Hannum had initiated their divorce and were living apart. At that time, both the AMX and the Mustang were removed from appellant's garage, appellant suspecting that they were taken by her estranged husband.
Appellant learned that the vehicles were being held on the premises of appellee C-Pac Service, Inc., in Columbus, Ohio. Appellee James Fisher is a principal of C-Pac, which is in the automotive business, and either employed or contracted with Hannum to do auto detailing work. Appellant went to C-Pac's place of business, accompanied by a Fairfield County Sheriff's Deputy, and demanded the return of her vehicles. Fisher was reluctant to return the vehicles despite being shown the titles, but did provide appellant with a signed document stating that the AMX and the Mustang were in fact stored on the property and would not be released to Hannum. This meeting between appellant and Fisher took place on April 15, 1992. When appellant contacted Fisher on April 30, 1992, she learned that the vehicles had been released to Hannum and were no longer on the C-Pac lot.
In early August, 1992, appellant contacted Earla Van Scoy, an employee of Huntington, specifically requesting that the title to the Mustang not be released to anyone. Appellant memorialized this instruction by letter dated on or about August 18, 1992.
Shortly thereafter, Hannum asked the attorney who was representing appellant in the bankruptcy action to move the Bankruptcy Court for permission to sell the Mustang to Arena Motors for the sum of $25,000. The attorney in the bankruptcy action, uninformed by Hannum of the divorce proceedings, obtained an agreed order in the bankruptcy action dated August 27, 1992, approving the sale of the Mustang, and application of the proceeds to satisfy the Huntington lien with an approximate balance of $22,000. Arena Motor Sales purchased the Mustang for $25,000 and delivered the funds to the Chapter 13 trustee. The Huntington lien was in fact paid and the balance of the proceeds released in a check payable to appellant and Hannum. At about this same time, Hannum sold the AMX to a third party. Appellant's signature was forged on the title of both vehicles to effectuate the sale. A forged signature on the Mustang title was notarized by appellee Michael Cassidy, associated with Arena Motor Sales.
On December 9, 1992, appellant filed a motion for contempt in the pending divorce action alleging, inter alia, that Hannum had conveyed the Mustang without her consent, that she had not signed the title, that he had in fact forged her signature, and requesting that the court either compel restitution of the Mustang or assess the economic consequences of its improper conveyance to her husband in the division of marital assets.
In December 1993, appellant and Hannum entered into an agreed entry and decree of divorce purporting to represent a full and complete agreement and settlement of all issues relating to the termination of the marriage, including an equitable division of the marital assets. Section 7(B), under the heading Division of Personal Property provided:
 Vehicles — Defendant is hereby awarded the exclusive ownership of the 1968 Roadrunner automobile, the 1974 Mercedes 240 and the 20' Pace American car trailer, free and clear of any claim by the Plaintiff. Defendant shall pay and hold Plaintiff harmless on any and all indebtedness related thereto, including, but not limited to, insurance, liens, loans and maintenance. Plaintiff has no title interest in a motor vehicle, but does have exclusive use of a leased 1993 Lumina.
Appellant subsequently obtained new counsel to file a Civ.R. 60(B) motion for relief from judgment in the divorce matter, perfect an appeal, and obtain the appropriate stays. The appeal to the Fifth Appellate District was dismissed, and a Civ.R. 60(B) motion was never filed. Appellant subsequently brought suit for malpractice against her attorney for his handling of these matters, and eventually was awarded a judgment of $87,000 on December 17, 1996.
Appellees initially argue that the trial court granted summary judgment on the dual basis of collateral estoppel, and lack of jurisdiction, since under R.C. 3105.17.1(B) the domestic relations court had exclusive jurisdiction regarding the division of marital property. The trial court's decision does not mention this statute; furthermore, since the present action involves in large part tort actions against third parties not involved in the divorce, its applicability is not immediately apparent. Where the trial court decisions speak in terms of lack of jurisdiction, it is always in terms of res judicata or collateral estoppel, leading us to believe that the trial court's determination that it lacked jurisdiction was based upon these doctrines, and not upon a preemption of the issue by a domestic court, beyond the applicability of collateral estoppel on the specific issues raised. Boos v. Mid-American Natl. Bank (Apr. 9, 1993), Lucas App. No. L-92-275, unreported; Kobe v. Kobe (1978), 61 Ohio App.2d 67;State ex rel. Moss v. O'Grady (Sept. 27, 1994), Franklin App. No. 94APD03-443, unreported; Tanagho v. Tanagho (Feb. 23, 1993), Franklin App. No. 92AP-1190, unreported. ("Consequently, in an action for divorce, the common pleas court, or its domestic relations division, is limited in its jurisdiction to the determination of domestic relations matters and any collateral claims must be brought in a separate action in the appropriate court or division thereof, where the claim involves determination of the rights of a third-party.")
In Ohio, the doctrine of res judicata provides that an existing final judgment or decree between the parties is conclusive as to all claims that were or might have been litigated in the first lawsuit. Rogers v. Whitehall (1986), 25 Ohio St.3d 67
. The doctrine of res judicata may be broken into two branches: "Claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 381. "The doctrine of collateral estoppel, or, more correctly, issue preclusion, precludes further action on an identical issue that has been actually litigated and determined by a valid and final judgment as part of a prior action among the same parties or those in privity with those parties." State v. Williams (1996), 76 Ohio St.3d 290,294, citing Hicks v. De La Cruz (1977), 52 Ohio St.2d 71
. In Hicks, the Supreme Court appeared to relax the requirement of mutuality of parties by adopting the principles expressed in 1 Restatement of the Law 2d, Judgments (1982) 291, Section 29:[1] "A party precluded under this principle from relitigating an issue with an opposing party likewise is precluded from doing so with another person unless he lacked full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue." Hicks at 74. There is some question, however, whether the Ohio Supreme Court has retreated from the mutuality exceptions set forth in Hicks. Trautwein v. Sorgenfrei
(1979), 58 Ohio St.2d 493; Quinlan v. Ohio Dept. of Commerce, Div.of Consumer Finance (1996), 112 Ohio App.3d 113.
With respect to the law of res judicata, we find that the position of appellee Huntington is significantly different from that of the other appellees, because Huntington was a party to the bankruptcy action and the alleged tortious conveyance of the title to the Mustang was undertaken pursuant to an order of the Bankruptcy Court. The issues of mutuality of parties which may affect the other defendants in this case are therefore not present with respect to Huntington. While appellant asserts that the order from the Bankruptcy Court permitting conveyance of the Mustang and satisfaction of Huntington's lien was obtained fraudulently, through the misrepresentations of her former husband to their mutual counsel in the bankruptcy proceeding, we note the bankruptcy case was eventually dismissed and any issues of this nature were never raised by appellant. "[B]ankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for purposes of res judicata."Jungkunz v. Fifth Third Bank (1994), 99 Ohio App.3d 148, 153.
In the present case, the agreed order allowing the sale of the Mustang in the bankruptcy action was the result of a motion filed by appellant through her attorney in the bankruptcy action. Although appellant now asserts that she did not in fact agree to the sale and her counsel in the bankruptcy action was misled by Hannum, the bankruptcy action nonetheless proceeded to eventual dismissal without any protest to the Bankruptcy Court from appellant regarding the sale. Under Jungkunz, the order approving the sale gives rise to res judicata under Hicks and Grava, there being mutuality of parties and a final judgment upon the issue which was actually litigated and the issue in the present case is identical to the issue presented in the bankruptcy action. We, therefore, find that, with respect to Huntington, the trial court did not err in applying the doctrine of res judicata in order to grant summary judgment.
With respect to the other appellees, who were neither parties to the bankruptcy action nor the divorce case, the application of collateral estoppel is substantially more problematic. Appellees assert that the court in the divorce action expressly found that appellant had no interest in the Mustang or AMX, and that the issue was thus fully litigated and decided. Section 7(B) of the agreed entry, quoted in full above, does address ownership of various vehicles and states that "[appellant] has no title interest in a motor vehicle * * *." Since both the AMX and Mustang had been sold some time prior to the agreed entry in the divorce matter, it is not clear that a finding that appellant currently had no title interest in an automobile fully addressed issues related to improperly divested title previously held by appellant. Furthermore, resolution of property division issues between appellant and her former husband is not necessarily dispositive of appellant's tort claims against third parties. Although the determination of appellant's damages might involve an assessment to the extent to which her divorce settlement was effected by disposal of the automobiles, and concurrently an assessment of the extent of which she recouped such losses through her malpractice action against her former attorney, the threshold issue of tort liability of the various appellees other than Huntington remains a question. The improper notarization of forged signatures, the refusal by C-Pac to return her vehicles when she presented title, and possible collusion by Arena Motor Sales with Hannum in the disposition of the vehicles structured to benefit Hannum personally to the detriment of appellant's interest, all constitute torts which were allegedly committed by persons not a party to the divorce action, and although tangible to the divorce action not fully litigated therein. Under Moss,supra, it is arguable that claims against the present defendants would not have been permitted in the domestic proceedings at all.
Finally, we note that even under circumstances where the Ohio Supreme Court has found that mutuality of parties should be waived as a prerequisite to res judicata, this waiver should only be invoked upon principles of fairness, and "upon the basis of serving justice within the framework of sound public policy."Goodson v. McDonough Power Equip., Inc. (1983), 2 Ohio St.3d 193,202.
 "The doctrine of res judicata may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice."
* * *
 Upon a considered review of the arguments presented * * * we conclude that the principle of mutuality as a prerequisite to the application of collateral estoppel, as applied in this state, recognizing the need in certain instances for the flexibility and exceptions to such rule, has been responsive to the conflicting principles of due process and judicial economy. We therefore opt to adhere to such principle as a general proposition, while realizing that there may well be other cases in which there are presented additional exceptions which could be acceptable to this court upon the basis of serving justice within the framework of sound public policy. [Q]uoting 46 American Jurisprudence 2d 569-570 Judgements, Section 402.
In the present case, to allow blanket application of collateral estoppel to bar appellant's actions at the summary judgment stage, regardless of whatever other infirmities these claims may present, would be to establish a blanket rule that tortious conduct by third persons which results in harm to a party in a divorce proceeding, involving property eventually adjudicated in a divorce action, would not be subject to judicial recourse. In our view, such a rule is too broad, especially when applied to application of res judicata principles. We accordingly find that the trial court erred in applying res judicata to bar appellant's claims against C-Pac Service, Inc., James R. Fisher, Michael Cassidy, Arena Motor Sales, and Anthony M. Arena.
In summary, appellant's assignment of error is sustained in part and reversed in part. The trial court's granting of summary judgment for appellee Huntington National Bank is affirmed. The trial court's granting of summary judgment in favor of C-Pac Service, Inc., James R. Fisher, Michael Cassidy, Arena Motor Sales, and Anthony M. Arena is reversed. The matter is remanded to the trial court for further proceedings in accordance with this decision.
Judgment affirmed in part, reversed in part and cause remanded.
BROWN, J., concurs.
[1] Cited in Hicks as Restatement of the Law 2d, Judgments (Tent. Draft No. 4 [1977], Section 68, at page 1, and (Tent. Draft No. 2 [1975]), Section 88, at pages 89-90.