McINTOSH, Appellant,

v.

ROADWAY EXPRESS, INC. et al., Appellees.

[Cite as *McIntosh v. Roadway Express, Inc.* (1994), 94 Ohio App.3d 195.]

No. CA93–10–202.

Court of Appeals of Ohio,
Butler County.

Decided April 4, 1994.

*Curtis McIntosh, pro se.*

*Cors & Bassett* and *Robert J. Hollingsworth,* for appellees.

WILLIAM W. YOUNG, Judge.

Plaintiff-appellant, Curtis McIntosh, appeals an order of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Roadway Express, Inc. ("Roadway") and Harry Bellman ("Bellman"), the Cincinnati garage manager for Roadway.

On June 23, 1986, appellant was hired by Roadway as an assistant supervisor in the Cincinnati garage facility. Prior to being hired, appellant completed and signed an employment application which stated in part:

"If employed, I agree * * * that my employment will be at the will or sufferance of Roadway Express, Inc. subject to termination without recourse at any time for any or no reason * * *. I understand that the terms and conditions herein set forth may only be modified by written agreement jointly executed by myself and the president or a vice-president of the company."

Appellant also received and read a copy of Roadway's Code of Corporate Conduct (the "Code"). The Code twice emphasized that "[c]ompany employees are employed at the will or sufferance of the Company subject to termination without recourse at any time for any or no reason."

On July 6, 1988, during his annual performance review with Bellman, appellant expressed his concerns over economic discharges occurring company-wide among the supervisors. In response to appellant's concerns, Bellman allegedly promised, "I can flat out tell you, Curt, that as long as you want to work at Roadway, you've got a job."

In 1990, after he realized that Roadway was not performing certain safety inspections as required by the Federal Highway Administration, appellant began reporting these violations to his supervisors, with his final report being submitted on March 18, 1991.

In 1991, Roadway implemented a reduction in force among garage supervisory personnel due to a business decline. In Cincinnati, Bellman discussed who should be discharged with three garage operations managers who directly supervised and observed the work of the assistant garage supervisors. Appellant was discharged on April 19, 1991. Since then, no garage supervisor has been hired at the Cincinnati garage.

On September 13, 1991, appellant filed suit in the United States District Court for the Southern District of Ohio against appellees, asserting that appellees had discharged him in violation of the Employee Retirement Income Security Act ("ERISA"). Three pendent state claims of breach of implied contract, promissory estoppel, and whistleblower discharge in violation of R.C. 4113.52 were also asserted. On March 8, 1993, the federal court granted appellees' motion for summary judgment on the ERISA claim, finding that appellant had been discharged "for legitimate economic reasons." The court further declined to exercise jurisdiction over the pendent state claims and dismissed them without prejudice. On March 30, 1993, appellant refiled the three state claims in the trial court. On September 14, 1993, the trial court granted appellees' motion for

summary judgment. Appellant timely filed this appeal and raises the following assignments of error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of plaintiff-appellant by granting defendants-appellee[s'] motion for summary judgment on the whistleblower claim."

Assignment of Error No. 2:

"The trial court erred to the prejudice of plaintiff-appellant by granting defendants-appellee[s'] motion for summary judgment on the implied contract and promissory estoppel claims."

In his first assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees with regard to his whistleblower claim, as this claim was not actually litigated in the federal court. Appellant contends that, since the federal court based its holding solely on whether appellees discharged appellant in violation of ERISA, appellant was not foreclosed by collateral estoppel from pursuing the claim in the state court.

■ The doctrine of collateral estoppel precludes a party from relitigating an issue of fact or law when the following elements are met:

"(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit." *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74–75, 6 O.O.3d 274, 276–277, 369 N.E.2d 776, 777–778.

■ Accordingly, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may affect the outcome of the second suit.

■ The issue raised in the federal proceedings was whether there was an ERISA violation. The issue in the state court proceedings was whether the defendant was discharged in retaliation for his "whistleblowing." As an incident to its summary judgment decision, the federal court examined all the facts and circumstances surrounding appellant's claims in order to find any inference of pension funds violation. In granting summary judgment in favor of appellees, the federal court found that:

"[T]he Plaintiff has offered nothing but conclusory allegations in support of his complaint * * *.

"* * * *

"The Defendants' supporting affidavits demonstrate that those who made the decision to discharge the Plaintiff did so not only for legitimate economic reasons, but also without knowledge of the Plaintiff's vesting date. Furthermore, * * * the discharges were not for misconduct, but rather for economic reasons * * *."

By finding that appellees' motivation to discharge appellant was for legitimate economic reasons in its determination of the federal issue, the federal court necessarily included appellant's state whistleblower claim. Appellant was therefore collaterally estopped from relitigating the whistleblower claim in the trial court. We conclude that the trial court correctly granted summary judgment in favor of appellees. Appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred in granting summary judgment in favor of appellees with regard to his implied contract and promissory estoppel claims. Appellant contends that Bellman's alleged promise and Roadway's Code and policies altered his at-will employment relationship. We do not agree.

Under Ohio law, an employment relationship, absent an agreement to the contrary, is regarded as an employment at will which can be terminated at any time by the employer. *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144. Ohio courts have, however, recognized two exceptions to the employment-at-will doctrine. Employee handbooks, company policy and oral representations may give rise to implied contractual provisions that alter the terms of an oral at-will employment relationship. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 104, 19 OBR 261, 264–265, 483 N.E.2d 150, 155. An employer's right to discharge an employee may also be limited by representations or promises made to the employee which fall within the doctrine of promissory estoppel. *Id.* It is appellant's contention that Bellman's alleged promise falls within the doctrine of promissory estoppel. Appellant alleges that he detrimentally relied on that promise by remaining at Roadway and ceasing his job search.

Promissory estoppel applies to at-will employment agreements if the employer should have reasonably expected the employee to rely on its representations, and if the expected action or forbearance actually resulted and was detrimental to the employee. *Mers, supra,* paragraph two of the syllabus. We find that promissory estoppel does not apply in the case at bar. The oral assurances appellant refers to were made once by an individual who was not appellant's immediate supervisor and not responsible for making appellant's employment evaluations. Such statements do not create a genuine issue as to whether clear and unambiguous promises were made upon which one could reasonably rely. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio

App.3d 663, 670, 591 N.E.2d 752, 756–757. Furthermore, there are no specific examples in the record of any positions or jobs which appellant passed over to remain at Roadway. Summary judgment was therefore appropriate in this regard.

Appellant further contends that the Code's at-will provisions are negated by Bellman's promise and by the Code's general disclaimer which provides that "[c]ompany policies, practices and procedures set forth herein or in Company manuals * * * are for information only and are not intended to be construed as creating contractual obligations." Appellant contends that both the promise and the Code's disclaimer give rise to an implied contract of employment.

The provisions of an employee handbook will alter the terms of an at-will employment relationship only if the employer and the employee have agreed to create a contract from the writing. In the absence of mutual assent, a handbook is simply a unilateral statement of rules and policies that creates no obligation or rights. *Tohline v. Cent. Trust Co.* (1988), 48 Ohio App.3d 280, 282, 549 N.E.2d 1223, 1227. We find that the Code's general disclaimer clearly manifests Roadway's intent not to be contractually bound by the policy statements and procedures contained in its Code. Therefore, it does not give rise to an implied contract of employment. Furthermore, as already discussed, Bellman's alleged promise does not allow reasonable minds to conclude that the parties had agreed to anything more than an employment-at-will relationship. Summary judgment was therefore appropriate with regard to appellant's implied contract claim.

In conclusion, we find that there were no genuine issues of material fact and that, as a matter of law, appellant and Roadway maintained an employment-at-will relationship which permitted either party to terminate the relationship. Appellant's second assignment of error is therefore overruled.

*Judgment affirmed.*

JONES, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

Clearly, the federal court's decision determined only appellant's claims on the ERISA cause of action, and the federal court refused to exercise jurisdiction over three pendent state causes of action.

In affirming the trial court's dismissal of appellant's whistleblower claim, the majority relied on *Hicks v. De La Cruz* (1977), 52 Ohio St.2d 71, 74–75, 6 O.O.3d 274, 276–277, 369 N.E.2d 776, 777–778, concluding that the federal court's

dismissal of the ERISA claim necessarily included the whistleblower claim and that collateral estoppel applies to such claim.

If the majority is correct in affirming the trial court's decision on the whistleblower claim, would not the same logic be applicable to the other pendent claims? I believe the trial court and the majority of this court are in error in applying the doctrine of collateral estoppel to any of appellant's state claims.

In considering the trial court's summary judgment in favor of Roadway on the issue of implied contract and promissory estoppel, the majority finds that the oral assurance admittedly made to the employee "was made once by an individual who was not his immediate supervisor." Nevertheless, it appears that the promise was made by a superior employee, who participated in the company's hire or fire decisions. The employee relied upon such promises and, his fears being allayed, he thereby had no reason to seek other employment opportunities. Again, I would find that the trial court and the majority were in error.

On the issue of implied contract, the majority relies upon the corporate Code's general disclaimer to support the trial court's granting of summary judgment for the employer. The majority points out that a handbook, in this case the corporate Code, is simply a unilateral statement of rules and policies that create no obligations or rights.

Appellant raises an interesting argument on this issue. The Code specifically provides that neither the Code nor other company manuals or publications create contractual obligations; therefore, Roadway disclaims its own employment-at-will disclaimer. Accordingly, appellant contends he was simply hired as an at-will employee and the disclaimer in the application for employment or in any other publication could not defeat his claim based upon the theory of promissory estoppel or on an implied contract of continued employment.

There being a multitude of genuine issues of fact in the matter, summary judgment was improperly awarded to appellees, the trial court should be reversed, and the cause remanded for trial.