OPINION
Sherry Jackson, et al., plaintiffs-appellants, appeal from separate orders of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees.
On February 7, 1993, defendant Ernest Street loaned his car to defendant Ray Burt in exchange for cocaine. (Deposition of Mr. Ernest Street, May 20, 1994, p. 6; Deposition of Mr. Ernest Street, August 29, 1994, p. 6). With appellants' decedent, Lavelle Shavers, riding as a passenger in the front seat, the two then picked up Demetrius Allen who rode as a passenger in the back seat of the car (hereafter referred to as the "Burt vehicle"). The three continued on, riding around the Youngstown, Struthers, and Boardman area and eventually into the Poland area. (Deposition of Mr. Demetrius Allen, pp. 10-13)
At a parking lot in Poland, defendant-appellee Poland Township Police Officer Rey Kleshock was sitting in his patrol car exchanging information with defendant-appellee Poland Village Police Officer Tim Deskin. (Deposition of Officer R. C. Kleshock, p. 7). The Burt vehicle first caught the attention of Officer Kleshock as it proceeded south from the intersection of State Route 170 and U.S. Route 224 in Poland. Officer Kleshock observed that the car's license plate was not illuminated. (Deposition of Officer R. C. Kleshock, p. 7)
Officer Kleshock chose not to stop the Burt vehicle at that time and it proceeded southbound for a distance where Burt stopped and made a telephone call. (Deposition of Officer R. C. Kleshock, p. 9; Deposition of Mr. Demetrius Allen, pp. 13-14, 23-29). After the call was made, Burt turned the car around and headed north back into Poland, towards Struthers. (Deposition of Mr. Demetrius Allen, pp. 13-14). Approximately five to ten minutes later as the car passed by the officers again, Officer Kleshock also observed that the vehicle's windshield was cracked. (Deposition of Officer R. C. Kieshock, pp. 9, 12-13) Having observed both the non-illuminated license plate and the cracked windshield, Officer Kleshock decided that he was going to attempt a traffic stop of the car. (Deposition of Officer R. C. Kleshock, pp. 7, 12-13; Deposition of Officer Timothy Deskin, p. 12). Officer Kleshock communicated his decision to Officer Deskin and he replied that he would back Kleshock up. (Deposition of Officer R. C. Kieshock, p. 7; Deposition of Officer Timothy Deskin, p. 12). Both officers then exited the parking lot pulling in behind the Burt vehicle. Once behind the Burt vehicle, Officer Kleshock noticed the trunk lock was punched out, an indication to him that the car was possibly stolen. (Deposition of Officer R. C. Kleshock, pp. 7-3) Officer Kleshock then radioed in the license plate. The dispatcher responded with the vehicle information indicating that the car was not stolen. (Deposition of Officer R. C. Kleshock, p. 3; Deposition of Officer Timothy Deskin, pp. 14-15)
Based on his observations of the equipment violations Officer Kleshock attempted to initiate a traffic stop of the car by activating his patrol car's overhead lights and siren. (Deposition of Officer R. C. Kleshock, p. 8). Officer Deskin also activated his patrol car's overhead lights. (Deposition of Officer Timothy Deskin, p. 14). Initially, the Burt vehicle slowed to approximately twenty miles per hour but then it accelerated rapidly. (Deposition of Officer R. C. Kleshock, p.
Both officers pursued the vehicle northbound on State Route 170. As Officer Kleshock approached the upcoming Matthews Road intersection he slowed down. (Deposition of Officer R. C. Kleshock, p. 9). The Burt vehicle continued northbound on State Route 170 through the intersection on a red light. (Deposition of Officer R. C. Kleshock, p. 9)
Just prior to the Burt vehicle going through the intersection, Carol Norberg, an uninvolved third party motorist, had turned from Matthews Road onto State Route 170, heading northbound — unknowingly situating herself just ahead of the pursuit that was forthcoming. (Deposition of Carol F. Norberg, pp. 6-3). Norberg observed the pursuit approaching in her rear view mirror. The Burt vehicle then entered the center or passing lane in order to pass Norberg's vehicle. As Burt attempted to reenter the northbound lane the car began to slide on gravel that had accumulated on the center lane. Burt lost control of the car on the gravel. The Burt vehicle slid 130 degrees, traveled off the right side of the roadway, and crashed into a group of trees. (Deposition of Officer R. C. Kleshock, p. 9; Deposition of Mr. Demetrius Allen, p. 18)
After crashing into the trees, the Burt vehicle began to catch fire. The officers used fire extinguishers to extinguish the fire. (Deposition of Carol F. Norberg, pp. 12-13). Fire trucks and ambulances responded to the scene. (Deposition of Carol F. Norberg, p. 13; Deposition of Officer R. C. Kleshock, p. 25). Driver Burt and passenger Allen were treated for their injuries. Shavers died as a result of the crash.
As a result of Shaver's death, litigation was initiated by plaintiffs-appellants Sherry Jackson, et al. by the filing of a complaint in the United States District Court, Northern District of Ohio, Eastern Division on February 7, 1994. The complaint set forth five causes of action. Three causes of action were for civil rights violations (42 U.S. Code Sections 1981, 1983, and 1985). The two remaining causes of action were for pendent state claims for wrongful death, negligent and intentional acts, and for denial of enjoyment of public accommodation by a governmental entity in violation of R.C. 4112.02.
On July 12, 1995, the district court granted appellees' motion for summary judgment on all of appellants' federal claims. The state pendent claims were then dismissed for lack of subject matter jurisdiction.
Having lost on their federal claims, appellants sought relief in the state court system by filing a complaint in the Mahoning County Common Pleas Court. The complaint, filed on May 30, 1996, set forth two causes of action. The first cause of action alleged that appellees acted negligently, willfully, and wantonly in operating their police cruisers, employing distinctly different police chase policies, and in failing to enforce these and other policies. Appellants sought recovery as administratrix of the estate of Shavers and his next of kin pursuant to R.C. 2125. The second cause of action alleged that because of appellants' decedent's race he was denied the full enjoyment of public accommodation (i.e., State Route 170) in violation of R.C. 4112.02.
Defendants-appellees Poland Township, Chief Carl Massulo, and Patrolman R. C. Kleshock, filed a motion for summary judgment on September 16, 1996. Appellants responded with a motion in opposition on November 15, 1996. On November 29, 1996, Judge Gerchak denied appellees' motion for summary judgment. On December 5, 1996, Judge Cacioppo, appointed as a visiting judge after Judge Gerchak resigned from the bench, decided without further comment to grant appellees' motion for summary judgment. Judge Cacioppo"s judgment entry contained no language indicating that there was no good cause for delay.
Apparently recognizing that Judge Gerchak had signed a previous entry denying appellees' motion for summary judgment, Judge Cacioppo vacated that entry, nunc pro tunc, on December 16, 1996. Appellants then appealed Judge Cacioppo's orders of December 5 and December 13, 1996, to this court. On September 24, 1997, this court consolidated the two appeals.
On January 16, 1997, defendants-appellees Village of Poland, Police Chief Russell Beatty, and Officer Tim Deskin filed their motion for summary judgment. Appellant responded on March 3, 1997, with a memorandum in opposition to the motion. On April 22, 1998, Judge Durkin granted the aforementioned defendants-appellees' motion for summary judgment. Appellants timely appealed this decision on May 12, 1993.
The case before this court presents three appeals all of which have been consolidated. To recap, the first appeal (Case No. 96 C.A. 261) relates to the judgment entry filed by Judge Cacioppo vacating the earlier judgment entry of Judge Gerchak which overruled the motion for summary judgment filed by defendantst-appellees Poland Township, Chief Carl Massulo, and Patrolman R. C. Kleshock. The second appeal (Case No. 97 C.A. 13) relates to Judge Cacioppo's judgment entry granting the same defendants-appellees' motion for summary judgment. These two appeals (Case Nos. 96 C.A. 261 and 97 C.A. 13) were consolidated by this court on September 24, 1997 and were to share Case No. 96 C.A. 261. The third appeal (Case No. 98 C.A. 105) relates to Judge Durkin's judgment entry granting summary judgment in favor of defendants-appellees Village of Poland, Police Chief Russell Beatty, and Officer Tim Deskin. On August 10, 1993 this court filed a journal entry effectively consolidating all three appeals (Case Nos. 96 C.A. 261, inclusive of 97 C.A. 13, and 98 C.A. 105)
In their first assignment of error, appellants allege that:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' MOTION FOR SUMMARY JUDGMENT WHERE PLAINTIFF-APPELLANTS DEMONSTRATED THE EXISTENCE OF GENUINE ISSUES OF MATERIAL FACTS."
I. SUMMARY JUDGMENT STANDARD OF REVIEW
An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588; Brown v. SciotoBd. of Commrs. (1993), 87 Ohio App.3d 704, 711. See, also,Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1976),54 Ohio St.2d 64, 66. See, also, Civ.R. 56 (C).
In order to prevail upon a motion for summary judgment, the moving party must inform the trial court of the basis for the motion and identify those portions of the record which demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. In Dresher, the Ohio Supreme Court explained:
 "[T]he movant must be able to point to evidentiary materials of the type listed in CiV.R. 56 (C) that a court is to consider in rendering summary judgment * * *. These evidentiary materials must show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law * * *. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." Id., at 292-293
The evidentiary materials referred to by the court include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action. Civ.R. 56 (C).
The court is obligated to view all evidentiary material in a light most favorable to the nonmoving party. Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317. However, when faced with a properly supported motion for summary judgment a nonmoving party may not rely upon the mere allegations set forth within his or her complaint, but must demonstrate that a material issue of fact exists by directing the court's attention to evidentiary materials of the types referred to in Civ.R. 56 (C). Dresher, supra, at 292. Succinctly, viewing all facts in a light most favorable to the nonmoving party, the court must determine whether the evidence presents a sufficient disagreement to require submission of a claim to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner v. Turner (1993), 67 Ohio St.3d 337, 340.
II. TORT CLAIM
The complaint filed by appellants in the trial court below set forth two causes of action. Under the first cause of action, appellants alleged that as a proximate result of appellees' "negligence and willful and wanton conduct in operating police cruisers, employing distinctly different police chase policies and failing to enforce these and other policies, " appellees caused appellants' decedent to be "severely injured and undergo severe pain and suffering until time of death." (Appellants' complaint, paragraph 5)
A. Governmental Immunity
The crux of appellees' motion for summary judgment was that they were entitled to governmental tort immunity. Chapter 2744 of the Revised Code governs a political subdivision's, tort liability. As a general rule, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02 (A) (1). An exception to this general rule of immunity exists when the alleged tort involves the negligent operation of a motor vehicle by an employee of a political subdivision. Consequently, a political subdivision is liable for injury, death, or loss to persons or property caused by the negligent operation of any motor vehicle by an employee of the political subdivision who was acting within the scope of their employment and authority. R.C. 2744.02 (B) (1). However, a full defense to such liability arises when the employee is a police officer operating a motor vehicle while responding to an emergency call and the operation of the vehicle did not constitute willful or wanton misconduct. R.C. 2744.02 (B) (1) (a).
The full defense provided for political subdivisions under R.C. 2744.02 (B) (1) (a) reduces the liability of appellees herein to a two-step analysis. First, we must determine whether the officers were operating their patrol cars while responding to an emergency call. Otherwise, general negligence principles apply. Second, we must determine if the officers' operation of their patrol cars constituted willful or wanton misconduct.
R.C. 2744.01 (A) defines an emergency call as "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer."
In his deposition testimony, Officer Kleshock identified three observations which formed the basis of his probable cause to attempt a traffic stop of the Burt vehicle. He observed an unilluminated license plate light and a cracked windshield obstructing the driver's view, both of which are violations of Ohio's traffic laws. His third observation was that of the punched out trunk lock, an indicator to him that the vehicle was possibly stolen. Appellants contend that Officer Kleshock's testimony was contradicted by Ernest Street thereby creating a genuine issue of material fact. Street testified that the cracks in the windshield were on the passenger's side, that the license plate light was in good working order, and that the trunk lock was punched out.
Appellants misconstrue the import of Street's testimony. Appellants' argument seems to be premised upon the idea that cracks in the windshield located only on the passenger's side of the vehicle will not obstruct the driver's view. This would mean that a driver always looks straight ahead when driving and never has occasion to look slightly to the right. We decline to adopt such a notion.
Appellants also take issue with the fact that Officer Kleshock learned from dispatch that the Burt vehicle was not reported stolen before he attempted a traffic stop. Appellants give this fact more weight than it deserves. Although the information from dispatch was that the vehicle was not reported stolen, Officer Kleshock's observation of the punched out trunk lock was a sufficient indicator that the vehicle may have been stolen. The mere fact a vehicle has not been reported stolen does not necessarily mean that it has not been stolen.
Additionally, appellants maintain that Officer Kleshock could not have made the observations that he allegedly did from where he was parked. However, appellants offer nothing more than speculation in support of this argument. Civ.R. 56 requires evidentiary support.
Consequently, the evidence is uncontroverted that Officer Kleshock observed a cracked windshield and a punched out trunk lock, an indication that the vehicle may have been stolen. These observations alone were sufficient to present Officer Kleshock with a "call to duty." Furthermore, the Burt vehicle sped away as the officers attempted to stop it. As the pursuit commenced the Burt vehicle began to accelerate away from the officers at a speed in violation of the posted speed limit. All of these factors taken together support the conclusion that the officers observed Burt create a dangerous situation which demanded an immediate response on the officers' part. Thus, on its face, the officers' pursuit of the Burt vehicle constituted an "emergency call" as defined in R.C. 2744.01 (A). Rodgers v.DeRue (1991), 75 Ohio App.3d 200, 203.
Appellants have failed to carry their burden of rebuttal to supply evidentiary material in support of their position that Officer Kleshock was not responding to an "emergency call," as required under Civ.R. 56 (E). Therefore, we conclude as a matter of law that reasonable minds could only conclude that Officer Kleshock was responding to an "emergency call."
Next we turn to a determination of whether the officers' operation of their patrol cars constituted willful or wanton misconduct.
Ohio courts have held that a motion for summary judgment can properly resolve the determination of willful or wanton misconduct in police pursuit cases. Lewis v. Bland (1991),75 Ohio App.3d 453, cert. denied (1991), 62 Ohio St.3d 1478, motion for rehearing denied, 63 Ohio St.3d 1407; Rogers v. DeRue,supra. "The term "willful and wanton misconduct' connotes behavior demonstrating a deliberate or reckless disregard for the safety of others." Moore v. Columbus (1994), 98 Ohio App.3d 701,708.
Appellants assert that there are several genuine issues of material fact concerning whether the officers' operation of their patrol cars constituted willful or wanton misconduct. Appellants argue that there were factors present during the pursuit which made the situation one which posed an immediate danger to the general public. Appellants argue that the following factors in isolation or combined served to make the pursuit one which posed a danger to the general public: the age and condition of the car being pursued, the speeds which the pursuit reached, and adverse road conditions. None of these factors bear any relevance to the determination of whether the officers' operation of their patrol cars constituted willful or wanton misconduct.
Appellants argue that the officers' failure to follow their department pursuit policy constituted willful and wanton conduct. In their deposition testimony both officers maintained that they did not deviate from their department's pursuit policy. However, their police chiefs disagreed acknowledging that the officer's conduct did violate their department pursuit policy.
As additional support for their position on this particular issue, appellants point to the affidavit of W. Ken Katsaris, their purported expert witness. Katsaris concurred with the police chief's conclusion that the conduct of the officers did not comply with department pursuit policy. Specifically, Katsaris noted that the officers deviated from department pursuit policy by failing to transmit pertiment information to dispatch and/or a supervisor such as the reason (i.e., the probable cause) for the attempt to stop the vehicle, the age and condition of the vehicle, the purported adverse road conditions, and a description of the vehicles' occupants. Appellants also stress that the officers departed from department pursuit policy when they failed to take "special consideration" of the fact that the vehicle was being operated by a juvenile with other juvenile occupants.
Despite appellants' assertions, the fact that the pursuit may have violated some departmental policy or procedure is not relevant to whether the officers' operation of their patrol cars constituted willful or wanton misconduct. Rodgers v. DeRue,supra, at 205.
Appellants again point to the affidavit of Katsaris wherein he opined that the amount of training the officers received was tantamount to deliberate indifference. However, again, this factor does not bear any relevance to the determination of whether the officers' operation of their patrol cars constituted willful or wanton misconduct on the day in question. See generally Rodgers, supra.
Appellants have failed to carry their burden of rebuttal to supply evidentiary material in support of their position that the officers' operation of their patrol cars constituted willful or wanton misconduct, as required under Civ.R. 56 (E). In contrast, the evidentiary materials submitted in support of appellees' motion for summary judgment establish that the officers drove defensively over lightly traveled roads and used their patrol cars' overhead lights and sirens. There is no evidence that the officers attempted to run the Burt vehicle off the road, followed too close a distance causing the driver to crash, or acted in any way other than to follow the vehicle. Therefore, we conclude as a matter of law that reasonable minds could only conclude that the officers' operation of their patrol cars did not constitute willful or wanton misconduct.
B. Proximate Causation
Appellants also are entitled to summary judgment on the basis of proximate cause. The pursuit of the Burt vehicle by the officers was not the proximate cause of decedent's injuries. In Lewis v. Bland (1991), 75 Ohio App.3d 453, 456, the court held that:
 "It is the duty of law enforcement officials who observe reckless motorists to apprehend those motorists who make highways dangerous to others. The proximate cause of an accident in such a situation is the reckless driving of the pursued, notwithstanding recognition of the fact that police pursuit contributed to the pursued's reckless driving. When a law enforcement officer pursues a fleeing violator and the violator injures a third party as a result of the chase, the officer's pursuit is not the proximate cause of those injuries unless the circumstances indicate extreme or outrageous conduct by the officer, as the possibility that the violator will injure a third party is too remote to create liability until the officer's conduct becomes extreme. * * *" (Other citations omitted.)
In this case, a review of the facts demonstrates that it was the reckless driving of Ray Burt, rather than the officers' conduct, that was the direct and proximate cause of decedent's injuries. Appellees presented no evidence that the pursuit of the Burt vehicle constituted extreme and outrageous conduct. We find that construing the evidence in a light most favorable to appellants, reasonable minds could only conclude that officers' conduct was not the proximate cause of the accident.
II. R.C. 4112.02 CLAIM
The crux of appellants' second cause of action is found in paragraph 9 of their complaint and reads as follows:
 "Plaintiffs further allege that because of Plaintiffs' decedent's race that Plaintiffs' decedent was denied the full enjoyment of a public accommodation, to wit: State Route 170, by said Defendant governmental entities and Defendant governmental employees in violation of Ohio Revised Code 4112.02."
Appellants assign as error Judge Cacioppo's failure to address this issue in her judgment entry granting appellees' motion for summary judgment.
The main thrust of R.C. 4112.02 is to provide legal recourse for those who have been discriminated against in their employment or in the use and enjoyment of public accommodations. In their motion for summary judgment, appellees Poland Township, Police Chief Massullo, and Officer Kleshock, directed the trial court's attention to the lack of specificity in appellants' allegations. In their response to appellees' motion for summary judgment, appellants stated that they were relying on R.C.4112.02 (G). Read together with the statement that prefaces the entire section, the statute provides as follows:
 "It shall be an unlawful discriminatory practice:
 "(G) For any proprietor or any employee, keeper, or manager of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of race, color, religion, sex, national origin, handicap, age, or ancestry, the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation."
Appellees argue that this issue was litigated in federal court and that appellants are now precluded by the doctrine of collateral estoppel from relitigating the issue to a different conclusion here.
 "The doctrine of collateral estoppel precludes a party from relitigating an issue of fact or law when the following elements are met:
 "`(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) the issue must have been identical to the issue involved in the prior suit.' Hicks v. De La Cruz (1977), 52 Ohio St.2d 71, 74-75 * * *.
 "Accordingly, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may affect the outcome of the second suit." McIntosh v. Roadway Express, Inc. (1994), 94 Ohio App.3d 195, 199. (Internal citations omitted.)
The main issue raised in the federal proceedings was whether appellants' decedent and the other occupants of the vehicle were targeted because of their race. This issue was later decided adversely to appellants through the sustaining of a motion for summary judgment filed by appellees. This same issue is an essential element of appellants' state cause of action under R.C. 4112.02. Consequently, appellants' second cause of action fails by operation of the doctrine of collateral estoppel. Id.
Putting aside the applicability of the doctrine of collateral estoppel, a de novo review of the case supports a finding that summary judgment was appropriate. After viewing all of the evidence in a light most favorable to appellants, it is apparent that there remain no genuine issues of material fact upon which reasonable minds could differ and that appellees are entitled to judgment as a matter of law. As Judge White stated in his order granting appellees' motion for summary judgment:
 "Plaintiffs allege that the defendant police officers stopped the Burt vehicle because the occupants were black. In order to prove an equal protection claim of selective enforcement, the plaintiffs must prove that the Burt vehicle, compared with others similarly situated, was selectively treated and that such selective treatment was based on race. * * *
 "There is no dispute that the officers knew that the occupants of the Burt vehicle were black. That fact alone does not prove denial of equal protection. Plaintiffs' statements that there are no black families living in the Village of Poland or Poland Township does not show that the occupants of the Burt vehicle were treated differently because of their race or that black drivers were generally treated different than white drivers. Furthermore, plaintiffs have not supported their conclusion that there are no black families in Poland Township or the Village of Poland. Demetrius Allen, another occupant of the Burt vehicle, stated in his deposition that he had been to Poland before and never had any trouble." Order of Hon. George E. White, Case No. 4:94CV0250, United States District Court, Northern District of Ohio, Eastern Division, pp. 6-7
Accordingly, appellants' first assignment of error is without merit.
In their second assignment of error, appellants allege that:
 "THE TRIAL COURT'S SUCCESSOR JUDGE ERRED AND ABUSED HER DISCRETION BY VACATING THE ORDER OF THE PREDECESSOR JUDGE DENYING APPELLEES' MOTION FOR SUMMARY JUDGMENT."
Defendants-appellees Poland Township, Police Chief Massulo, and Officer Kleshock, filed a motion for summary judgment on September 16, 1996. Appellants responded with a motion in opposition on November 15, 1996. On November 29, 1996, Judge Gerchak denied appellees' motion for summary judgment. On December 5, 1996, Judge Cacioppo, appointed as a visiting judge after Judge Gerchak resigned from the bench, decided without further comment to grant appellees' motion for summary judgment.
Apparently recognizing that Judge Gerchak had signed a previous entry denying appellees' motion for summary judgment, Judge Cacioppo vacated that entry, nunc pro tunc, on December 16, 1996. Appellants allege that it was this order entered by Judge Cacioppo which amounted to an abuse of discretion.
Civ.R. 54 (B) states:
 "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
(Emphasis added.)
Case law is in accord. In Jarrett v. Dayton OsteopathicHosp., Inc. (1985), 20 Ohio St.3d 77, syllabus, the Ohio Supreme Court held that "[a]n order vacating a judgment that was entered against less than all the parties in which the trial court did not express determination that there was "no just reason for delay' is not a final, appealable order."
Judge Gerchak's order of November 29, 1996, adjudicated fewer than all the claims or the rights and liabilities of fewer than all the parties and did not contain the language, "no just reason for delay." Therefore, the order was not a final order and was subject to revision.
Although such orders are subject to revision, we find that the court erred in the manner by which it vacated Judge Gerchak's order (i.e., nunc pro tunc). In this case, it is obvious that the court revisited the merits of the summary judgment motion. Under these circumstances, the court should revisit the merits of the motion only after the movant has filed a motion for reconsideration predicated upon the same law and facts. See Maxey v. Lenigar (1984), 14 Ohio App.3d 458, paragraphs one of the syllabus; see also Phan v. Presrite Corp.
(1994), 100 Ohio App.3d 195. However, based on the facts and circumstances of this case, we find that the court's method amounted only to harmless error. See Civ.R. 61.
Accordingly, appellants' second assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
Cox, J., concurs.
Vukovich, J., concurs.
APPROVED:
 ___________________________________ Gene Donfrio Judge