OPINION
Plaintiff-appellant, Katrina Whistler, appeals from the decision of the Mahoning County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Western Reserve Care Services, d.b.a. Beeghly Immediate Care.
Appellee hired appellant as a part-time x-ray technician on September 14, 1988. Throughout her employment, appellant had been written up numerous times for disciplinary actions including hurting a patient and leaving the room, excessive tardiness, failing to perform work assignments according to the normal requirements of the job, and excessive absenteeism. Nevertheless, appellant received increases in compensation that were based on the cost of living and were usually issued at the standard rate.
On February 27, 1992, appellee supplied appellant with a booklet entitled "Conventional Standards of Workplace Behavior" (first handbook). Appellant signed a receipt indicating that she received a copy of the first handbook. A provision found in the first handbook stated that engaging in outside business activity while on hospital time was grounds for discharge.
In March of 1995, appellant brought homemade crafts into the workplace and sold them to other employees and patients. She received ten to twelve dollars for each craft. Appellant kept the crafts in the x-ray room and radiologists' reading room where both patients and employees had access to them. Because appellant sold the crafts to patients, appellee discharged appellant on April 14, 1995. Just prior to appellant's discharge, appellee had established a new handbook (second handbook) and circulated it to the employees. Appellant signed a receipt acknowledging she had received a copy of the second handbook. The new handbook specifically stated that the employees' employment was at-will.
On March 28, 1997, appellant filed a complaint for wrongful discharge with an additional claim for payment of accrued sick leave. The case was assigned to arbitration. On October 30, 1997, appellee filed a motion to dismiss or, in the alternative, for summary judgment. Appellee based its motion in part on appellant suing Western Reserve Care System, an entity that did not employ appellant. (Appellant, in actuality, was employed by Western Reserve Care Services.) On December 22, 1997, the trial court overruled appellee's motion to dismiss and withheld its analysis on the request for summary judgment pending the completion of arbitration.
The arbitrator found in appellant's favor and awarded her $25,000 as damages for back pay. Appellee filed a notice of appeal from the decision of the arbitrator. The trial court overruled appellee's motion for summary judgment finding that genuine issues of fact remained for trial. Notably, the original motion did not include the disclaimer found in the second handbook expressly stating appellant's employment was to be at-will.
Appellant subsequently amended her complaint on November 4, 1999 to include the proper party name. This complaint alleged two separate claims for wrongful discharge, breach of an implied contract and promissory estoppel. In response to the amended complaint, appellee filed a second motion for summary judgment that included the disclaimer found in the second handbook. The trial court granted the motion on April 6, 2000. Appellant now seeks relief from that judgment.
As her sole assignment of error, appellant states:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT. (Judgment Entry, R. App. 51)"
The Ohio Supreme Court set out the standard for considering motions for summary judgment in Dresher v. Burt (1996), 75 Ohio St.3d 280. The court stated:
 "We hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Emphasis sic.) Id. at 293.
Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsons v. Flemming (1994),68 Ohio St.3d 509, 511. When reviewing a summary judgment case, appellate courts are to apply a de novo standard of review. Cole v. AmericanIndus. and Resources Corp. (1998), 128 Ohio App.3d 546, 552.
Before addressing the merits of appellant's argument, we note that the trial court's journal entry granting summary judgment consists of one sentence and fails to provide any reasoning to support its decision. Such practice has become increasingly common. Although we conduct a thorough denovo review of the record on appeal, it would benefit not only this court, but also the parties involved if the trial court gave a concise explanation of its reasoning.
We also note, as a preliminary matter, that appellant has presented an affidavit that on some points directly contradicts her original deposition testimony. This court has recognized,
 "Where an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment." Kollmorgan v. Raghavan,(May 5, 2000), Mahoning App. No. 98 C.A. 123, unreported, 2000 WL 652429 quoting Pace v. GAF Corp., (December 18, 1991), Jefferson App. No. 90-J-49, unreported, 1991 WL 274002.
Consequently, we will disregard appellant's statements in her affidavit which directly conflict with her deposition testimony.
Appellant makes several arguments in support of her alleged error, which we will address out of order for clarity. First, she argues that the first handbook formed an implied contract between herself and appellee. Third, appellant asserts reasonable jurors could conclude that she was not "engaging in business" when she sold some of her crafts at work and, therefore, there exists a genuine issue of fact as to whether she violated that provision in the first handbook.
Ohio law recognizes a strong presumption in favor of the employment at-will doctrine in the absence of an expression of the parties' intent to be bound. Henkel v. Educational Research Council (1976),45 Ohio St.2d 249, 255. Either party to an oral, employment-at-will agreement may terminate the employment relationship for any reason that is not contrary to law. Haynes v. Zoological Soc. Of Cincinnati (1995),73 Ohio St.3d 254, 258. There are two exceptions to the employment at-will doctrine: implied contract and promissory estoppel. Mers v.Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraphs two and three of the syllabus.
Although an employment agreement may seem to be at-will, an examination of the history of the employer-employee relationship and the facts and circumstances surrounding the employment must be completed to determine the explicit and implicit terms in their agreement regarding discharge.Mers, 19 Ohio St.3d 100, at paragraph two of the syllabus. The facts and circumstances that the trier of fact may consider include: the character of the employment, custom and course of dealing between the parties, company policy, information in employee handbooks, representations by supervisory personnel, and written assurances reflecting company policy.Wright v. Honda of America Manufacturing, Inc., (1995) 73 Ohio St.3d 571,574 citing, Mers, 19 Ohio St.3d at 104.
Similarly, the provisions of an employee handbook may modify an at-will employment contract where the parties manifest an intention to be bound by the terms therein. Sowards v. Norbar, Inc. (1992), 78 Ohio App.3d 545. However, the provisions of an employee handbook will alter the terms of an at-will employment relationship only if the employer and the employee have agreed to create a contract from the writing. McIntosh v. RoadwayExpress, Inc. (1994), 94 Ohio App.3d 195, 201. "In the absence of mutual assent, a handbook is simply a unilateral statement of rules and policies that creates no obligation or rights." Id. citing Tohline v. Cent. TrustCo. (1988), 48 Ohio App.3d 280, 282.
In the present case, appellant did not have a written contract with appellee. Thus, the presumption arises that appellant's employment was terminable at-will.
It appears that appellant has alleged very little evidence that supports the idea that appellee assented to an implied contractual relationship with appellant. Appellee gave appellant a copy of the first handbook. The first handbook contained an acknowledgment, which appellant signed, that stated, "I understand that if it should become necessary to amend this program, YHA, Inc. [appellee] will provide me advance notice of any such changes." By this statement, appellee reserved the right to unilaterally amend the handbook at any time. Courts have considered the right to unilaterally alter an employee handbook as an indication of lack of mutual assent. Finsterwald-Maiden v. AAA S. Cent. Ohio (1996),115 Ohio App.3d 442, 447. Also, appellant has not presented any evidence that demonstrates that appellee negotiated with appellant regarding the content of the handbook, which is another factor courts have considered as indicating the lack of contractual intent. Id.
However, the first handbook contains a statement that reads, "[i]n the normal circumstance, discipline will involve a number of steps of progressive discipline. It is felt that this method is the fairest one available and protects the employee from suspension or discharge without just cause." (First Handbook, p. 6). The first handbook also includes a detailed procedure guide that discusses violations of company policy and the manner in which management will deal with violations. Thus, appellant and appellee may have entered into an implied contract when appellant continued working after appellee issued her the first handbook. Ohio courts have consistently found continued employment under an employment handbook to constitute adequate consideration to support an implied contract of employment. See Hanly v. Riverside Methodist Hosp. Found.,Inc. (1991), 71 Ohio App.3d 778.
However, we need not decide the issue of whether a contract existed because summary judgment was appropriate whether a contract existed or not. Appellant's third argument is that the terms in the alleged implied contract were ambiguous. Specifically she argues that she did not violate the term that prohibited conducting business on company time.
Contracts are to be interpreted to carry out the intent of the parties, as that intent is evidenced by the contractual language. AultmanHosp. Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. If the contract language is capable of two reasonable but conflicting interpretations, however, there is an issue of fact as to the parties' intent. Inland Refuse Transfer Co. v. Browning-Ferris Industries ofOhio, Inc. (1984), 15 Ohio St.3d 321, 322. On the other hand, the interpretation of a contract that is clear and unambiguous is a question of law, and no issue of fact exists to be determined. State ex rel.Parsons v. Fleming (1994), 68 Ohio St.3d 509.
Appellant testified at her deposition that she sold her crafts at work to employees and patients for ten to twelve dollars apiece. (Tr. 44, 50, 53). Although appellant does not dispute that she made these sales while at work, she contends that she was not conducting business because she did not solicit employees or patients, but instead, they approached her.
The first handbook clearly states that "engaging in outside business activity while on hospital time" is prohibited. The handbook also makes clear that this offense is punishable by discharge on the first offense. The provision is not ambiguous. It explicitly states the conduct it prohibits and the penalty for engaging in such conduct. It is also apparent from appellant's deposition testimony that she sold her crafts at work to patients. Since the language is clear and unambiguous and since appellant violated the rule, no issue of fact exists.
Accordingly, if no implied contract existed, summary judgment was appropriate since appellee was free to terminate appellant at will. If an implied contract did exist, summary judgment was appropriate because appellee discharged appellant for violating the terms of the first handbook. Therefore, appellant's first and third arguments are without merit.
Appellant's second argument proposes that she justifiably relied on the terms of the first handbook as constituting representations that appellee could not terminate her from employment except under circumstances consistent with terms in the handbook. She claims this reliance persuaded her to turn down other job opportunities. Appellant also relies upon compliments from nurses and supervisors on her work performance to support her claim of promissory estoppel.
Under Ohio law, promissory estoppel typically arises where an employer has made some type of specific promise to induce the initial hire, to retain an employee and keep the employee from seeking other employment or to otherwise cause the employee to take or forebear taking action. InHanly v. Riverside Methodist Hosp. (1991), 78 Ohio App.3d 73, the court required evidence that the employer dissuaded the plaintiff from seeking other job opportunities by making promises of job security. See alsoCondon v. Body, Vickers Daniels (1994), 99 Ohio App.3d 12.
In Mers, 19 Ohio St.3d at 105, the Ohio Supreme Court stated:
 "that where appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
 "The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.
It is clear from appellant's deposition that she did not actually rely to her detriment on any of appellee's alleged "promises." In her brief, she maintains she turned down four or five jobs based on her feeling of security in her position with appellee. During her deposition, however, appellant indicated appellee never prevented her from accepting other employment opportunities. In fact, she admits, "Well, I don't think they even knew that — no, they don't know that I was looking." (Tr. 115).
Furthermore, appellant admitted she did not take a job with a Dr. Osborne because he was not well established and the pay was not sufficient. (Tr. 72). She also indicated during deposition that she interviewed with a Dr. Malmer. She turned down that job because the hours were not going to work out. (Tr. 74, 75). She further stated she could have remained working at Cafaro Hospital; however, she was not interested in that position because they asked her to work full-time including midnights. (Tr. 75). Appellant similarly applied with Austintown Ambulatory but she turned down the job because she "realized maybe it was a little bit too far away to do call and make it there on time" and she heard rumors that it might be closing. (Tr. 77). Appellant testified that she turned down a job with Presby University in Pittsburgh because "the drive is not really worth that." (Tr. 79). When asked what other job opportunities were available, appellant responded "I don't know." (Tr. 79).
At appellant's deposition, appellee questioned her about specific promised job security. Appellee asked appellant:
 "Q Did they [appellee] promise you specifically that you would have a job? Did anybody promise you that you would have a job?
 "A I don't know if they promised anybody that, so I don't know why they would just specifically promise me.
"* * *
"Q But no one ever promised you anything verbally?
 "A I don't think anyone has ever said, `I promise that you're going to keep your job.' They would never do that with anybody." (Tr. 83, 86).
Furthermore, appellant's reliance on compliments from supervisors and nurses is unpersuasive since "[s]tanding alone, praise with respect to job performance and discussion of future career development will not modify the employment-at-will relationship." Helmick v. Cincinnati WordProcessing, Inc. (1989), 45 Ohio St.3d 131, 135-36.
It is clear from appellant's testimony that she had many reasons for turning down other job opportunities, none of which were appellee's alleged "promises." Accordingly, appellant has failed to meet her burden of presenting evidence that she had either been induced to forgo other employment opportunities or had been damaged by her reliance on appellee's alleged promises. This argument, therefore, is without merit.
Appellant's fourth argument involves the circulation of the second employee handbook on or about March 30, 1995, two weeks prior to appellant's discharge. The second handbook contained a statement acknowledged by appellant that she was an employee at-will and that it did not constitute a contract of employment. Appellant argues that the second handbook did not unilaterally change the terms of her implied contract.
Since appellant conducted business by selling her crafts, she was rightfully discharged despite whether a contract was in place or not. Accordingly, whether the second handbook established appellant's status as an employee at-will is irrelevant. Thus, appellant's fourth argument is without merit.
Appellant's fifth argument centers around the proposition that a disclaimer in an employee handbook must be unambiguous for it to effectively preclude any claim that the handbook alters an at-will employment relationship. In the present case, the second handbook contains a disclaimer stating "[a]s employees at will, you have the right to terminate your employment at any time." (Second Handbook, p. 18). Appellant claims this disclaimer is ambiguous because it does not specify whether the employer may terminate employment at any time. Absent fraud in the inducement, such a disclaimer stating that employment is at-will precludes an employment contract based upon the terms of the employee handbook. Wing v. Anchor Media, Ltd. Of Texas (1991), 59 Ohio St.3d 108,110. Also, the second handbook states in its conclusion that it is not intended in any way to be a contract. Furthermore, since appellee rightfully terminated appellant whether or not a contract was in place, this argument is without merit.
Accordingly, appellant's sole assignment of error is without merit.
For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs.
Waite, J., concurs.